WILLIAM G. DAVIDSON, Respondent, *v.* JOHN M. CORNELL et al., Appellants.

*It seems* that a servant entering into employment which is hazardous assumes the usual risks of the service and those which are apparent to ordinary observation, and when he accepts or continues in the service, with knowledge of the character of defective structures and of the dangers which may be apprehended, he assumes the hazards incident to the situation.

Where, however, although the defect is apparent, it may require skill and judgment, not possessed by ordinary observers, or by the servant, to give knowledge of hazards which may be apprehended therefrom, he does not assume those hazards.

Defendants were engaged in constructing an elevated railroad; they used for this work a steam engine and apparatus placed upon a platform on wheels, which moved along as the work progressed, upon girders resting upon cross-beams. While the platform was being moved forward the girders on which it rested gave way and the end of the platform fell to the ground. Plaintiff, an employe of defendants, at work upon the platform, where he had been employed for some time previously, was injured. In an action to recover damages plaintiff's evidence tended to show negligence on the part of defendants in not properly bracing the girders laterally, or bolting them to the cross-beams. *Held,* that while the alleged defects were apparent, yet as plaintiff, although having knowledge thereof, might not have been advised of the dangerous consequences that might result therefrom, and to give knowledge thereof, may have required some skill or judgment not available to him or to an ordinary observer, such consequences were not as matter of law obvious and within the hazards assumed, and the question of plaintiff's contributory negligence was one of fact for the jury; and so, that a motion for a nonsuit was properly denied.

While statements of a person injured, expressive of his present condition, made to a physician for the purpose of treatment, may be proved in his behalf, statements made as to the past, *i. e.,* as to pains which he had suffered or disabilities he had labored under, are not competent, and error in receiving such statements is not cured by testimony on his part that such statements were true.

(Argued February 1, 1892; decided March 22, 1892.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made June 23, 1890, which affirmed a judgment in favor of the plaintiff entered upon a

verdict, and also affirmed an order denying a motion for a new trial.

The action was brought to recover damages for personal injuries alleged to have been caused by the negligence of the defendants, who were engaged in the construction of a double-track elevated railway on Broadway in the city of Brooklyn. This was done by setting columns upright on either side of the street opposite each other in transverse lines and longitudinally about sixty feet apart, placing upon them iron cross-beams which supported girders, four in each span, extending from one to another of those cross-beams. And for the purpose of hoisting those long girders from the ground to their places in the structure, there was used a steam engine, boiler and other apparatus upon a platform on wheels. This was in the evidence designated as a "traveler." It was about twenty feet in width and about thirty feet in length, on twelve wheels, three resting on each of the four girders, and its weight was from ten to twelve tons. In advance of this traveler, and disconnected from it, were two derricks or cranes, called by the witnesses "grasshoppers," also on wheels. In hoisting a girder, the rope to which the tackle was attached led from it through the top of the crane, thence back to the traveler, where, by the power of the engine, it was wound about a drum, thus raising the girder to its place on the cross-beams. When the four girders, constituting a single span, were thus hoisted and bolted, the grasshoppers were taken onto that span, and the traveler, by means of a rope and tackle attached, fastened by a clamp to one of the inner longitudinal girders some distance in advance of it, and the application of the power of the engine was moved forward onto and near the forward end of the span of girders next in the rear to that on which the grasshoppers rested, there stopped, and by the use of chocks stayed, and another span of girders hoisted to their places. By this method of construction, the work had proceeded nearly one mile, when on February 14, 1888, the traveler, while being so moved, and the girders on which it rested, fell to the ground, causing the injury to the plaintiff of which he complains. He

was an employe of the defendants upon the traveler, and had been there so engaged for some time.    He recovered $2,500. The judgment was affirmed by the General Term.

Further facts are stated in the opinion.

*James Troy* for appellants.    The admission of the conversation between the plaintiff and Dr. Corey was clearly error. (*Roche* v. *B., C. & N. R. R. Co.*, 105 N. Y. 294 ; *Ryan* v. *P. M. Co.*, 57 Hun, 253.)    The testimony as to the manner of constructing the Sands street road after the accident on the Broadway road, was improperly admitted.    (*Johnson* v. *M. R. Co.*, 52 Hun, 111 ; *Simpson* v. *M. R. Co.*, 17 N. Y. S. R. 68 ; *Dougan* v. *C. T. Co.*, 56 N. Y. 8 ; *Band* v. *Daly*, 68 id. 557 ; *Satters* v. *D. & H. C. Co.*, 3 Hun, 339 ; *Dale* v. *D. & W. R. R. Co.*, 73 N. Y. 472.)    It was erroneous for the court to charge the proposition which rendered defendants liable for consequences against which their knowledge, best skill, judgment and experience was unable to guard, and it was erroneous for the court in its charge to exclude the effect of contributory carelessness.    (*Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 566 ; *Warner* v. *E. R. R. Co.*, 39 id. 468 ; *DeGraaf* v. *N. Y. C. & H. R. R. R. Co.*, 76 id. 125 ; *Leonard* v. *Collins*, 70 id. 90 ; *Slater* v. *Jewett*, 85 id. 62 ; *DeForest* v. *Jewett*, 88 id. 264 ; *Hussey* v. *Cooger*, 112 id. 614 ; *Hays* v. *F. S. & G. S. R. R. Co.*, 97 id. 259 ; *Baulec* v. *N. Y. & H. R. R. Co.*, 59 id. 357 ; *Dwight* v. *G. Ins. Co.*, 103 id. 341 ; *Lafflin* v. *B. & S. W. R. R. Co.*, 106 id. 139 ; *Loftus* v. *U. F. Co.*, 84 id. 455 ; *Dougan* v. *C. T. Co.*, 56 id. 1 ; *Feltham* v. *England*, L. R. [2 Q. B.] 33 ; *Creegan* v. *Marston*, 126 N. Y. 568 ; *Cullen* v. *Morton*, Id. 1 ; *Butler* v. *Townshend*, Id. 105 ; *Filbert* v. *D. & H. C. Co.*, 121 id. 257 ; *Kelly* v. *F. S. S. R. R. Co.*, 58 Hun, 93.)

*Chas. J. Patterson* for respondent.    The defendants were guilty of negligence in failing to take the precautions which were usually taken in such work to render the structure safe and secure before subjecting it to the heavy strain of moving the traveler over it.    (*Pantzar* v. *T. F. I. M. Co.*, 99 N. Y.

368; *Nichols* v. *B. & D. Co.*, 33 Hun, 137; 117 N. Y. 646; *Vredenberg* v. *N. C. R. R. Co.*, 14 id. 582; *Ford* v. *Lyons*, 41 Hun, 512; *Ryan* v. *Fowler*, 24 N. Y. 410; *Kranz* v. *L. I. R. R. Co.*, 123 id. 1; *Buckley* v. *P. H. I. O. Co.*, 17 N. Y. S. R. 436; 117 N. Y. 645.) The defendants were also under an obligation to provide a plan for the construction of the roadbed which, if it was faithfully carried out by their employes, would have resulted in the safety of the structure. (*Abel* v. *D. & H. C. Co.*, 103 N. Y. 581; *Sheehan* v. *N. Y. C. R. R. Co.*, 91 id. 332; *Cambell* v. *R. R. Co.*, 35 Hun, 506; *Whittaker* v. *D. & H. C. Co.*, 126 N. Y. 544; *McGovern* v. *C. V. R. R. Co.*, 123 id. 280; *Bulkley* v. *P. H. I. O. Co.*, 17 N. Y. S. R. 436; 117 N. Y. 645.) The plaintiff was not guilty of contributory negligence, nor did he assume the risks which arose from the failure of defendants to perform their duty to make the structure safe for the workmen. (*Kain* v. *Smith*, 89 N. Y. 375; *Grizzle* v. *Frost*, 3 F. & F. 622.) The statements made by plaintiff to Dr. Corey, in connection with the examination which the latter made of plaintiff's physical condition, were admissible in plaintiff's favor. (*Meeham* v. *M. R. Co.*, 115 N. Y. 647; *Matteson* v. *N. Y. C. R. R. Co.*, 35 id. 487; *Reed* v. *N. Y. C. R. R. Co.*, 45 id. 574; *Roche* v. *B. C. & N. R. R. Co.*, 105 id. 294; *Cleveland* v. *N. J. S. B. Co.*, 5 Hun, 523; *Fay* v. *Harlan*, 128 Mass. 241; *Kent* v. *Lincoln*, 32 Vt. 591; *Earl* v. *Tupper*, 45 id. 275; *Collins* v. *Waters*, 45 Ill. 485; *Towle* v. *Llake*, 48 N. H. 92; *State* v. *Gedicke*, 43 N. J. L. 86; *Bridge* v. *Oshkosh*, 67 Wis. 195; *Quaife* v. *C. N. & W. R. Co.*, 48 id. 513; *Ropers* v. *Cram*, 30 Tex. 195.) The servant does not assume the risk arising from the master's neglect. (*Stringham* v. *Stewart*, 100 N. Y. 516; *Pantzar* v. *T. F. I. M. Co.*, 99 id. 368; 117 id. 645; *McGovern* v. *C. R. R. Co.*, 123 id. 280.) The charge that if the accident would not have happened but for defendant's negligence, then the fact that negligence of a co-employe helped to bring it about would not be a defense, is good law. (*Cone* v. *D., L. & W. R. R. Co.*, 81 N. Y. 206; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 id. 546.)

BRADLEY, J.   The immediate cause of the giving way of the girders and the fall of the structure was the subject of some contention upon the evidence.

The plaintiff's counsel contends that it was the result of the negligent failure of the defendants to perform their duty to their employes, in that they did not use the care imposed upon them to provide a reasonably safe structure for the men to work upon, or proper means for its support or movement for the purposes of the service required.   If that proposition, in its application to the cause of the calamity in question, had the support of evidence, the charge of negligence on the part of the defendants was sustained.   (*Ryan* v. *Fowler*, 24 N. Y. 410 ; *Pantzar* v. *Tilly Foster Mining Co.*, 99 id. 368 ; *Kranz* v. *Long Island Ry. Co.*, 123 id. 1.)

There is no question about the competency of the men to perform the duties devolved upon them in the service.   The charge of negligence against the defendants has relation mainly to the system provided for the performance of the work of construction in which the plaintiff was engaged, and is, that there was a want of reasonable care in furnishing precautionary means for the safety of the employes upon it.   The structure, called the traveler, containing the engine, boiler and other appliances, was moved on the girders from one cross-beam to another, having the weight of ten to twelve tons, and required a substantial support.   In this instance, for some cause, it is said, the girders swayed as the traveler was moving along upon them, and they, with it, fell to the ground.   There was no lateral bracing placed between the girders before this weighty structure, called the traveler, was moved over them. Nor were the ends at the bottom bolted.   The upper portion of each end of the girders extended beyond the lower portion, and when it projected onto the cross-beams, where it rested on a seat plate and was held by two bolts, the lower portion set up against the beam and its bottom rested upon a bracket, where provision was made for bolting it also, but the bolting there was omitted until after the passage of the traveler over the girders.   This was the method of going along with the

work up to the time in question.   There was evidence tending to prove that the bracing would have added materially to the stability of the girders, to the support of the traveler, and to the safety of the employes engaged upon it; and that such bracing is usual in like cases in other work ; also that bolting the girders at the bottom as well as at the top would have essentially aided in keeping them in the position in which they were placed.   The conclusion was warranted that the situation in which the girders were when the platform conveying the engine, boiler and other implements was moved over them, was such as to be deemed in defective condition for such use and purpose.   Not because the girders had not of themselves adequate strength, but for the reason that they had not the support to keep them in proper position which they should have had, and which may have been given to them by such lateral bracing, and further support would have been given by bolting the ends at the bottom.   But it seems that the onward movement of the traveler was not delayed for that purpose, nor sufficient time to straighten bent girders.   Another force of workmen was supplied to follow the traveler, laterally brace them, and straighten such of the girders as were bent and complete the bolting of them at the ends.   This plan and system of proceeding with the work of construction may have been adopted and employed quite as much in reference to expedition as safety.   The movement of the platform on twelve wheels, each two feet in diameter, was slow and regulated, when necessary, by a rear or heel rope used to restrain its movement down grade and to aid in stopping its progress. And the steadiness of its movement very likely was supposed would give safety to it.   But in view of the fact that it may have been rendered more so, and perhaps perfectly safe, by taking little more time to brace and bolt the girders before attempting to pass the platform over them, permitted the conclusion that failure to do so was negligence on the part of the defendants in the method adopted to proceed with the work.   There was some, but not very satisfactory, evidence that the heel rope, as it was called, in the rear was defective, and on the occasion in

question was broken.   On the part of the plaintiff, evidence
was also given tending to prove that the rope or cable to which
the power was applied to draw the traveler over the girders
was not in line with its motion or movement, that the clamp
employed, not being such as could be fastened to the cross-
beam in direct line from the place it was attached for that
purpose to the moving platform, was fastened a distance in
advance of it to one of the longitudinal girders.   This was
the subject of considerable evidence, and it is by no means
clear that the divergence of this rope from the direct line of
motion was such as to be seriously prejudicial to the safe move-
ment of the structure, although the evidence may have pre-
sented a question in that respect for the jury in connection
with the condition in which the girders were when required
to support the transmission of the platform over them.   But
the main question seems to have had relation to the defective
manner in which the girders were stayed to their places.

It is, however, urged by the defendants' counsel that although
they may not have been as firmly supported as they should
have been, the plaintiff, having been engaged on the work for
considerable time, knew the situation of the girders, that they
were neither braced nor bolted at their ends to the brackets
on the cross-beams, and assumed such hazards as were incident
to the operation of the platform on which he was engaged in
the service.   It is, as a general rule, true that a servant enter-
ing into employment which is hazardous assumes the usual
risks of the service, and those which are apparent to ordinary
observation, and when he accepts or continues in the service
with knowledge of the character of structures from which
injury may be apprehended, he also assumes the hazards inci-
dent to the situation.   (*Gibson* v. *Erie Ry. Co.*, 63 N. Y. 449;
*DeForest* v. *Jewett*, 88 id. 264; *Sweeney* v. *Berlin, etc.,
Envelope Co.*, 101 id. 520; *Hickey* v. *Taaffe*, 105 id. 26;
*Williams* v. *D., L. & W. R. R. Co.*, 116 id. 628.)   Those
not obvious assumed by the employe are such perils as exist
after the master has used due care and precaution to guard the
former against danger.   And the defective condition of struc-

tures and appliances which, by the exercise of reasonable care of the master, may be obviated, and from the consequences of which he is relieved from responsibility to the servant by reason of the latter's knowledge of the situation, is such as is apparent to his observation. (*Kain* v. *Smith*, 89 N. Y. 375; *McGovern* v. *C. V. R. R. Co.*, 123 id. 280.)

It was plain to be seen that there was no lateral bracing between the girders. This the plaintiff knew. He may also have observed that the ends were bolted only at the top. As they were resting upon the cross-beams, it may be that no apprehension of danger in the passage of this loaded platform over them was apparent to ordinary observation. And the importance of such bracing and bolting for the purpose of safely taking and moving that weight upon them by the means applied and in the manner it was, may have required some skill or judgment not available to an ordinary observer, or to the plaintiff. The knowledge of what appeared to him to be the situation may not necessarily have advised the plaintiff of the consequences which might result from it. The place of the plaintiff's service was on the platform where was located the power applied to raise the girders, and when that was being done, it was sixty feet or more in the rear from the place where the girders, as they were hoisted, were placed and bolted. The inference was permitted from the evidence that the defective condition occasioned by the want of bracing and bolting for the purposes of bearing the moving weight upon the girders, and the consequences to be apprehended from such omission, so far as they were attributable to such causes, were not within the hazards of the service assumed by the plaintiff, nor was he, as matter of law, chargeable with contributory negligence, and, therefore, the motion for nonsuit was properly denied.

For the purpose of proving the character and extent of the injury the plaintiff had sustained, a medical witness was called and testified that, the Saturday before the trial commenced (which was more than a year after the accident), the plaintiff came to his house and submitted himself to the examination of

the witness. After testifying that he formed an opinion that the plaintiff was suffering from an injury to the spinal cord from some cause, the doctor was asked : " What are the symptoms of that injury, and what does that injury do in case of disabling him ? " And answered : " There is inability to walk ; inability to stand, even. There is want of sensation in the lower extremities ; there is marked tenderness over a portion of the spine ; there is a loss of sexual power. Of course, my opinion in that respect must rest upon his declarations, but if his statement be true, there is an entire loss of sexual power." The defendants objected to the witness stating what the plaintiff said to him, and on the doctor proceeding to state something further that the plaintiff had said, the defendant's counsel moved that it be stricken out. The court, in denying the motion, remarked that the evidence was taken with the understanding that it would be stricken out unless the fact should be proved by him. The defendant's counsel excepted. The witness further testified that he asked the plaintiff about his power of sexual intercourse. The doctor was then asked the following question, objection to which was overruled and exception taken : " Q. What question did you ask him, and what reply did he make, concerning sexual intercourse ? A. I asked him whether or not he had sexual intercourse, and he said he had not ; I said to him, have you had since the injury ? A. Never. I said to him, have you had any intercourse with your wife since then ? He said, I have never been able to." And the witness gave some further evidence of the declaration of the plaintiff on the subject of his sexual disability during that time. In overruling the objection, the court said that he would receive the evidence under the " same ruling and limitations " already indicated. The question arises whether or not the reception of this evidence was error. As a general rule, declarations made out of court by a party are not admissible as evidence in his behalf. But his statements to his attending physician of the nature of the symptoms of his malady or suffering have quite uniformly been held admissible, and from necessity they were formerly deemed competent when made

to persons other than medical attendants under some circumstances. (*Caldwell* v. *Murphy*, 11 N. Y. 416; *Werely* v. *Persons*, 28 id. 344; *Matteson* v. *N. Y. C. R. R. Co.*, 35 id. 491.) But since the Code permits parties to make their statements under oath as witnesses, that necessity in this state has ceased to exist, and as a rule declarations made to persons other than the medical attendant of the party, are not admissible as evidence. (*Reed* v. *N. Y. C. R. R. Co.*, 45 N. Y. 574; *Roche* v. *Brooklyn City, etc., R. R. Co.*, 105 id. 294.)

It was, however, held in *Hagenlocher* v. *C. I. & B. R. R. Co.* (99 N. Y. 136), that the evidence of a non-medical witness that the plaintiff (who had received an injury) manifested pain by screaming, was held competent because it was apparently involuntary and corroborated by what appeared to be her condition. The rule of admissibility of statements made to physicians by persons who have been physically injured, or are suffering from disease, is not an unqualified one. They must relate to present and not past pain and suffering. (*Towle* v. *Blake*, 48 N. H. 92.) And it has been held that their declarations, after controversy had arisen, made at a medical examination then had for the purpose of preparing evidence, and not for medical treatment, were incompetent. (*Grand Rapids & Ind. R. R. Co.* v. *Huntley*, 38 Mich. 537; *Jones* v. *Prest., etc., of Portland*, 50 N. W. R. 731.) In *Matteson* v. *N. Y. C. R. R. Co.* (35 N. Y. 487), it was held that expressions of pain and suffering made by the injured person to physicians when they were examining him were competent evidence notwithstanding the examination was made by them with a view to testifying as to the result of it in a suit then pending. The same was said in *Kent* v. *Town of Lincoln* (32 Vt. 591). It may be seen that when attended by a physician for the purpose of treatment there is a strong inducement for the patient to speak truly of his pains and sufferings while it may be otherwise when medically examined for the purpose of creating evidence in his own behalf. It is, therefore, that the weight of judicial authority is to the effect that the statements expressive of their present condition are permitted to be given

as evidence only when made to a physician for the purposes of treatment by him. (*Barber* v. *Merriam*, 11 Allen, 322; *Fay* v. *Harlan*, 128 Mass. 244; *Roche* v. *Brooklyn City, etc., R. R. Co.*, 105 N. Y. 294.)

In the present case the declarations in question of the plaintiff were not instinctive nor were they made to the physician with a view to medical treatment. They consisted not of exclamation of present pain or suffering, but were the plaintiff's statements so far as called for by the doctor of the effect upon him of the injury and the consequences which had followed in such respects from the time it occurred, a period of nearly fifteen months. This was hearsay, and is very different from that of a medical witness as to the expressions by a patient or person suffering from injury or disease, indicating pain or distress or expressive of the present state of his feelings in that respect. We think the reception of the evidence was error. And although the plaintiff testified to the truth of the statements made to the doctor his evidence did not cure the error. The character of his injury was an important fact as bearing upon the question of damages. And although his evidence may have constituted the basis in part at least of a hypothetical question for the opinion of the doctor it cannot be said that the evidence given by the latter of the plaintiff's declarations were not prejudicial to the defendants. The plaintiff's interest as a party presented the question of his credibility for the jury, and his evidence could not properly be corroborated by proving that the facts to which he testified corresponded with the declarations made by him to the doctor. This for the support to the plaintiff's evidence was not admissible. (*Robb* v. *Hackley*, 23 Wend. 50; *Reed* v. *N. Y. C. R. R. Co.*, 45 N. Y. 574.)

The other exceptions taken require no consideration as they may not necessarily arise upon another trial.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.