(15 Misc. Rep. 222.)

### REICHERT v. BUFFALO SPRING & GEAR CO.

(Superior Court of Buffalo, General Term.   December 23, 1895.)

INJURY TO EMPLOYE—CONTRIBUTORY NEGLIGENCE.

The operator of an elevator, the doors to the shaft of which, when in condition, work automatically, each door remaining closed except when the elevator is opposite it, is guilty of contributory negligence where he, knowing that the door on the fourth floor is out of order, and will not close of itself, fails to close it, and, while in the elevator, on a lower floor, is injured by articles thrown into the shaft through the open door by an employé who supposes that the elevator was at that door.

Appeal from trial term.

Action by George Reichert against the Buffalo Spring & Gear Company.    From a judgment for plaintiff, and an order denying a motion for new trial, defendant appeals.    Reversed.

Argued before TITUS, C. J., and HATCH, J.

Box, Norton & Bushnell, for appellant.
C. S. Crosser, for respondent.

TITUS, C. J.    This action is brought to recover damages which the plaintiff sustained, while in the employ of the defendant, in having a load of carriage seats thrown down upon him by one of the employés of the defendant.    The accident occurred on the 10th day of September, 1892.    The plaintiff was employed to run the elevator in the defendant's factory, and had been employed every day since the 31st day of May preceding.    The elevator shaft was entirely inclosed, with doorways opening onto each floor.    These openings were provided with automatic double sliding doors, and opened as the elevator approached the floor, either ascending or descending, and closed as the elevator left the floor.    When the elevator was on the level of a floor, the doors were fully opened, and as the elevator passed three or four feet either up or down, the doors closed, coming together in the center of the opening. The elevator was used for carrying material from one floor of the building to another.    There is some proof in the case that the plaintiff was in the habit of opening the doors, and then tying them back, or blocking them, so they would not close without loosening the fastenings; but we do not think this is important, in the view taken of the case, as there is no evidence that the plaintiff on this occasion fastened the doors open.    An employé on the

fourth floor, having occasion to send a truck load of material to the floor below, pushed the truck towards the elevator, and, seeing the door open, and supposing the elevator was at that floor, ran his truck into the opening, and dumped the truck and 25 carriage seats into the elevator shaft, and they fell upon the plaintiff, who was in the elevator, unloading wheels at the third floor, the one next below, and caused the injuries of which he now complains. It appears further that on the morning in question the doors opening onto the fourth floor had got out of order, and the plaintiff notified the head engineer of the defendant, and the master mechanic of the shop was sent to fix them. He put on a new rope, and then the plaintiff went up and down past these doors in the elevator a few times, to see if they would work. They did not work well. According to the plaintiff's testimony, they would not shut quick enough, and jerked. He says he "told the man fixing them the doors were not right; they would not shut; and that he would have to fix them"; and he was told "that it was dinner time. It is all right. They will do. If something is wrong, I will fix it some other time. It is twelve o'clock now." Nothing further was done to fix the doors, and the plaintiff ran the elevator in the afternoon until about 3 o'clock. Not having business on the fourth floor, he did not open the doors until he came down at that hour with the foreman, when he opened the doors at this floor, and let the foreman out, but did not stop the elevator, nor did he look to see whether the doors closed as the elevator passed on down, as they would have done if in good working order. Before the elevator had passed four feet below the level of the floor, he would have known, had he looked, that the doors did not close, but stood wide open, and remained in this condition until the accident. The witnesses Hoover and Handsborough were the first ones at the door after the accident, and before the plaintiff had been rescued from the elevator. Hoover says that the doors were open and he "took the door and pulled it a little, and it closed up." The door at this time was not blocked or tied back, but had from some cause stuck in the pocket, and would not close of itself.

It is the duty of the master to furnish a safe place for his servants to work, and supply them with proper and safe tools and appliances, and to keep them in a reasonable condition of repair; and, if he fails in this respect, he is liable to the servant for any injury which he has received through the master's neglect. Wright v. Railroad Co., 25 N. Y. 562; Laning v. Railroad Co., 49 N. Y. 521; Flike v. Railroad Co., 53 N. Y. 549; Cone v. Railroad Co., 81 N. Y. 206; Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449; Murray v. Usher, 117 N. Y. 543, 23 N. E. 564; Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952. But this rule has no application where the party complaining has knowledge that the machinery is out of repair, or has the same knowledge as the master that there are defects which render it unsafe to use such defective machinery, In such cases the servant assumes the risks of his employment, and, if he is willing to use defective machinery, knowing it to be

such, he cannot recover, because his own negligence and want of care are the cause of the injury. In Marsh v. Chickering, 101 N. Y. 396, 5 N. E. 56, in speaking of the duty of the master, Judge Miller, in the opinion of the court, says:

"The rule stated, however, is not applicable in all cases, and, where the servant has equal knowledge with the master as to the machinery used or the means employed in the performance of the work devolving upon him, and a full knowledge of the existing defects, it does not necessarily follow that the master is liable for injury sustained by reason of the use thereof. * * * He fully comprehends that the instrument which he employs is not perfect, and, if he is thereby injured, it is by reason of his own fault and negligence."

In Hart v. Naumburg, 123 N. Y. 641, 25 N. E. 385, the court of appeals reversed a judgment in favor of the plaintiff for injuries received while running an elevator in the defendant's manufactory, for the reason that the servant had the same means of ascertaining the defective condition of the elevator as the master, and he could not recover for injuries received from such defective condition. In Davidson v. Cornell, 132 N. Y. 228, 30 N. E. 573, the court of appeals, in reversing a judgment in favor of the plaintiff for injuries received from the use óf defective machinery while in the defendant's employ, held that where a servant enters into hazardous employment he assumes the risks of the service, and those which are apparent to ordinary observation; and when he accepts or continues in the service with knowledge of the character or structures from which injury may be apprehended he also assumes the hazard incident to the situation. In Cregan v. Marston, supra, the court held that the general rule that the master owes to the servant the duty of keeping machines and appliances in repair does not apply to defects arising in the daily use of the machine, and of which the servant has as much knowledge as the master, and which can be easily remedied by the workmen with material supplied for that purpose by the master. Many other cases might be cited to the same effect, that when the defect in a machine is as apparent to the servant as to the master, or when a defect exists of which the servant has full knowledge, and, while continuing to use such defective machinery, receives an injury; or when the defect is one occurring from the daily use of machinery, and one not permanent in character, but such as can be easily remedied by the workmen, and to repair which proper materials are provided by the master,—in these cases the servant cannot recover for any injury received, because it is attributable in law to his own negligence in the use of defective machinery, the condition of which he knows, or ought to know, as well as the master. Considering the facts in this case, and measuring them by the standard adopted by the courts as suggested above, the plaintiff cannot recover in this action. According to his own testimony, he knew that the doors to the fourth floor were out of repair, and would not automatically close, as he had run the elevator up and down that morning for the very purpose of determining that fact, and told the workman who made the repairs that it would not do; that the doors would not close;

and yet, knowing this, and that there was a constant liability that the workmen on that floor would use the elevator, he recklessly and heedlessly, in passing down, permitted the doors leading into the elevator shaft on the fourth floor to remain open. He must have known they were open, for, if they had been in working order, they would have been closed before he passed by the opening, and in full view. He must have known it, because the last time he opened the doors before the accident he saw the doors would not close, and he had no reason to suppose the defect had been repaired.

We do not think it necessary to consider any of the other questions raised by the counsel for the defendant on this appeal. We rest our decision on the° sole ground that the plaintiff was guilty of negligence in not seeing to it that the door to the elevator shaft was closed, having full knowledge of the fact that the door was out of repair, and would not automatically close.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to abide the event.

HATCH, J. (concurring). In this case I agree fully with the conclusion reached by Judge TITUS, and the ground upon which he places his decision. But I am also of the opinion that defendant's negligence was not established, and that plaintiff took the risk of the situation which led to his injury.