(75 App. Div. 267.)

## ALLISON v. LONG CLOVE TRAP ROCK CO.

(Supreme Court, Appellate Division, Second Department. October 3, 1902.)

1. SERVANT—INJURY—DEFECTIVE APPLIANCE—QUESTION FOR JURY.

   A quarry employé engaged in driving a carload of stone along the side of a mountain was required to unhitch his horses at the point where the down grade began, so that the car could descend by gravity, and was injured by the car running against him while so doing. The car was a new one, and had been furnished without brakes, and, while brakes were being made, defendant's foreman, without the direction of defendant's superintendent, made use of a rope fastened to the framework of the car, and wrapped around the rear axle, and designed to be held by the brakeman standing behind the car and pulling on it. There was no evidence of inspection between the time the rope was supplied and the time of the accident. *Held*, that the sufficiency of the appliance used for checking the car was for the jury.

2. SAME—ASSUMPTION OF RISK.

   The employé had only been placed at work on the car the day before the accident. *Held*, that he had not assumed the risk incident to the use of a temporary appliance as a matter of law.

3. SAME—CONTRIBUTORY NEGLIGENCE.

   Plaintiff testified that he dismounted from the car when it reached the descending grade, and was endeavoring to detach the horse when the car, which had nearly stopped, started ahead again by reason of the brakeman's inability to hold it back, struck him, and threw him down, so that in some way his leg got across the rail, and was crushed; that he was "standing alongside" the car at the time; that he "wasn't inside the rail," etc. *Held* not to show contributory negligence as a matter of law.

Appeal from trial term, Rockland county.

Action for personal injuries by Zachariah T. Allison against the Long Clove Trap Rock Company. Judgment of nonsuit, and plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

William McCauley, for appellant.

John W. Boothby, for respondent.

HIRSCHBERG, J. The plaintiff, while working for the defendant in a quarry near the village of Haverstraw, on the Hudson river, on the 20th day of May, 1899, sustained injuries which resulted in the amputation of his leg, and this action is brought to recover the damages. At the close of the case, a nonsuit was directed by the learned trial justice, and this appeal is taken from the judgment entered thereon.

The accident occurred while the plaintiff was driving a horse, hitched to a car loaded with three tons of rock, upon a tramway on the side of a mountain, and which led from the quarry to a stone crusher several hundreds of feet distant. The road was level until it reached a point 370 feet from the crusher, but from that point to the crusher descended at a grade of one foot in a hundred. After driving the horse upon the level part of the tramway to the point referred to, it was the plaintiff's duty to there unhitch the horse, so that the car could go the rest of the way by gravity, and it was while he was so engaged on the day in question that the car ran against him, and occasioned his injuries. The plaintiff testified that the defendant's foreman instructed him to unhitch the horse at that point, and this statement was not denied by the foreman, although he was called as a witness on behalf of the defendant.

Giving to the plaintiff, as we are bound to do under the circumstances, the benefit of the most favorable inferences deducible from the proof, it cannot be said that there was nothing for the consideration of a jury. The direct cause of the accident was the apparent inability of an employé of the defendant, named Flynn, to hold the car in check by means of the appliances furnished to him by the defendant for that purpose. The cars were new ones, just purchased by the defendant, and had been furnished by the manufacturer without brakes. The defendant was constructing proper brakes with the intention of attaching them to the cars, and some of them were completed upon the day of the accident, but had not yet been attached. In the meantime the defendant used the cars for several days without brakes. The defendant's foreman, without the direction of the defendant's superintendent, adopted a "temporary device," as the superintendent styled it, to act in place of a brake. This was a rope fastened to the framework of the car, and wrapped three times around the rear axle, and was designed to be held by the brakeman standing behind the car and pulling upon it for the purpose of stopping and holding the car. It was claimed by the defendant that this device was quite adequate so

long as the rope was new and unworn by contact with the rough axle, but it was conceded that it was not an appliance in general use.   There was no evidence of inspection between the time the rope was supplied as a brake and the time of the injury.   At the time of the accident, the brakeman, Flynn, was seen by the plaintiff in his proper place pulling on the brake rope, but in spite of his efforts the car continued on the down grade with accelerated motion.   Here was some evidence from which a jury might reasonably conclude that the accident occurred because of the insufficiency of the appliance furnished for the uses designed, and, even if the evidence of defendant's negligence be so slight that a verdict based upon it would be set aside, it is now settled that it must be submitted to the jury.   Fealey v. Bull, 163 N. Y. 397, 57 N. E. 631; McDonald v. Railway Co., 167 N. Y. 66, 60 N. E. 282.

Nor can it be said that the plaintiff assumed the risks incident to the use of this temporary appliance, so as to bar a recovery as matter of law.   He was only placed at work upon the car the day before the accident, and, while it is true that the nature of the device employed to check the car was visible, its sufficiency or insufficiency would not necessarily be obvious to an ordinary observer,· but might require special skill and judgment for a correct determination.   Under such circumstances, the workman is not held, as matter of law, to assume the risk of consequences which are not obvious; and the question becomes one for the jury.   Davidson v. Cornell, 132 N. Y. 228, 30 N. E. 573; Smith v. King, 74 App. Div. 1, 77 N. Y. Supp. 3.

It is claimed, however, that the plaintiff failed to establish his freedom from contributory negligence, and, indeed, that on the proof he was chargeable with negligence as matter of law.   The case in this regard rests wholly on his own evidence, as no one else who witnessed the accident testified at the trial.   Flynn was not called by either side.   According to the plaintiff's story, he dismounted from the car when he reached the point of the descending grade, and was endeavoring to detach the horse, when the car, which had nearly stopped, started ahead again by reason of Flynn's inability to hold it back, struck him, and threw him down so that in some way his leg got across the rail, and was crushed.   The learned counsel for the respondent asserts in his brief that the plaintiff "got down off the car while it was in motion; stepped in front of it; stumbled, fell, and was injured"; and that "there was no necessity for the plaintiff to put his foot over the rail to get the pin out, but he did so, and, by doing so, his leg was caught and injured."   If this is a correct statement of the occurrence, the nonsuit, of course, was proper.   But the plaintiff persistently asserted the contrary.   He testified:

"Flynn, at the time I got off the car, was pulling on the rope.  I tried to release the horse by getting this pin out.  And in getting that pin out I got knocked down.  I reached under the car, and tried to pull the pin out.  I was standing alongside the end of the car at the time.  I did not succeed in getting the pin out.  I was alongside of the car, just so I could reach in to the pin.  With my right hand I reached under to pull the pin out.  With my left hand I had hold of the horse,—the lines.  The horse was standing still at the time.  This car was going slowly, just moving a little at the time I was trying to release the horse.  Flynn, at that time, was pulling on the rope.  There was a down grade at that place.  In order to

extend my hand in there under the car, and to get out that pin, it was necessary for me to bend my body,—to extend it in the direction of the car. I did bend over in that position. It was then, while I was in that position, that the car pushed me down. The car started again before I got the horse loose. By the Court: It hadn't stopped altogether. It went a little faster when I started to unfasten the pin. By Mr. McCauley: I didn't get the pin out. I didn't get hold of the pin at all. Just got my hand to it. The front end of the car struck me. The outside of the front end. It knocked me down. I fell kind of face first on the outside of the track. The car caught my leg. * * * The car must have dragged my left leg over the rail. I did not put it over. By the Court: There was no need in taking the pin out, to put either leg over the rail. I wasn't inside of the rail. You can reach by reaching the arm over; the car projects outside of the rail quite some."

It is evident from this statement of the occurrence that the plaintiff could not be held chargeable with contributory negligence upon the assumption, as claimed in the respondent's brief, that he deliberately stepped over the rail, and in front of the moving car. It may be that he was guilty of negligence in standing at the side of the car, and reaching for the pin before the car had fully stopped, and it may possibly be that that act constituted negligence as matter of law; but it may also be that it was a risk of his employment, which he was obliged to assume in obeying instructions to detach the horse at that place, in reliance upon the power of the brakeman to stop the car while he was so doing, —an act which would not have been necessarily fraught with danger or injury if the breaking apparatus had been adequate. Excepting on the occasion in question, Flynn had succeeded in stopping the car by means of the rope, and the operation of unhitching the horse was always safely accomplished. The case was submitted in this court, on the briefs, without argument; and the allegation of contributory negligence is predicated solely upon the suggestion that plaintiff's injury "was caused by his getting down from the car, and in front of it, while it was still moving." That suggestion has been shown to be unfounded. If, on a new trial, it shall be made to clearly appear that the plaintiff's duty did not require him to make any attempt to unhitch the horse until the brakeman had succeeded in wholly stopping the car, the plaintiff's act may very well have been such a negligent one as would preclude a recovery. On the present proof, it is undisputed that he was instructed to release the horse at the point in question, and it is to be noted that, while he could stop the horse there for that purpose, he could not stop the car. That was entirely under Flynn's control so far as any means of control existed. It is not, therefore, plain whether the act of the plaintiff in endeavoring to unhitch the horse before the car had altogether stopped is to be viewed under the rules which govern the law of negligence or of assumed risks. In such cases, even the burden of proof rests differently, being borne in the one case by the plaintiff, and in the other by the defendant. The distinction in principle between contributory negligence and assumed risks has been recently pointed out by the court of appeals in the case of Dowd v. Railway Co., 170 N. Y. 459, 63 N. E. 541, and what is there said is peculiarly applicable to the question under consideration.

The specific charge of contributory negligence alleged in the case at bar being without foundation, it would seem juster that the case should be disposed of now on the theory which the counsel has presented, and on which it was apparently tried, rather than upon a theory which, under the proof as it now stands, is at least of doubtful application. If the plaintiff's injury resulted from the assumption of a risk of his employment in necessary exposure, while the car was still in motion, to danger from such movements as it might make in spite of the brakeman's efforts to control it, the burden of proving the waiver implied by the assumption of the risk incident to the use of the rope as a brake rests upon the defendant (Dowd v. Railway Co., supra), and has not been successfully borne upon the record as now presented. If, on the other hand, the injury resulted from a negligent exposure to risk which the plaintiff's duty did not require, he must, of course, fail in the action, on well-settled principles of the law of negligence.

It is further urged, on behalf of the respondent, that the accident occurred because the plaintiff had substituted a contrivance of his own invention in place of the one which had been furnished by the master, and which contrivance was designed to enable him to unhitch the horse while the car was in motion, which could not have been done with the apparatus originally supplied. If this is true, the nonsuit was fully justified, but the proof wholly fails to sustain the contention. As originally arranged, the horse was hitched to the car by means of a rope, the front end of which was fastened to the whiffletree. There was a ring on the other end of the rope, and this was slipped between the two perforated lips of a cast-iron drawhead attached to the dead-wood of the car, and an iron pin was thrust through the lips of the drawhead and the intervening ring. The plaintiff then was obliged to take the pin out in order to release the horse, and to carry the pin in his hand until the horse was again hitched to the car. He caused the defendant's blacksmith to make him a longer pin with a top projecting above the lips of the drawhead, which would hold the hitching ring, and which ring could then be slipped on and off the pin while the latter remained stationary in the drawhead. Whether this contrivance was a good or a bad one is quite immaterial, inasmuch as it is plain that the accident was in no way occasioned by its use. The plaintiff was injured while endeavoring to reach the pin, and it could make no difference whether he was endeavoring to reach the pin which the defendant had furnished or the one which he himself had caused to be made. If the change was effected in order to enable him to remove the horse while the car was in motion, it would, indeed, seriously affect the disposition to be made of the case. But this the plaintiff positively denies, and insists without contradiction that the only difference was that, in the first instance, the ring was held by the pin between the lips of the drawhead, while afterwards it rested upon the head of the pin. The change, therefore, has no significance except in its possible bearing upon the question whether the plaintiff did, indeed, improperly endeavor to release the horse, while the car was in motion, as an unnecessary and negligent act, and not as an incident to his employ-

ment, the risk of which he voluntarily assumed in reliance upon the protection which a proper braking apparatus would afford.

Under all the circumstances, we think a new trial should be granted.

Judgment reversed, and new trial granted, costs to abide the event. All concur.