DAVID POLLACK, Plaintiff, *v.* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant.

DAVID POLLACK, Plaintiff, *v.* THE MANHATTAN LIFE INSURANCE COMPANY OF NEW YORK, Defendant.

Municipal Court of New York, Borough of Manhattan, Fifth District, April 16, 1936.

*Morris H. Halpern,* for the plaintiff.

*Alexander & Green* [*S. M. Lane* of counsel], for the defendant Equitable Life Assurance Society.

*Ross, Dodge & Miller* [*John J. Cunneen* of counsel], for the defendant Manhattan Life Insurance Company.

LEWIS (DAVID C.), J.   This trial is the second presentation of a controversy based on the same insurance policy.

In July, 1935, the plaintiff commenced similar actions against both insurance companies seeking payment of the disability allowances for certain months prior thereto.   Upon that occasion the Equitable Life Assurance Society settled the action before the trial. The action against the Manhattan Life Insurance Company proceeded to trial before a judge and jury on the 21st day of October, 1935, and resulted in a verdict in favor of the defendant.

The complaints in the actions before this court demand disability payments for the months ending August, 1935, to and including January, 1936.

The disability clause in the Equitable policy reads as follows:

" Disability shall be deemed to be *total* when it is of such an extent that the Insured is prevented thereby from engaging in any occupation or performing any work for compensation of financial value, and such total disability shall be presumed to be *permanent* when it is present and has existed continuously for not less than three months   *   *   *

" *   *   *   if it appears at any time that the Insured has become able to engage in any occupation or perform any work for compensation of financial value, no further premiums will be waived and no further Disability-Annuity payments will be made hereunder on account of such disability."

The disability clause in the Manhattan policy reads as follows: " Disability shall be deemed to be total and permanent whenever the insured becomes totally disabled by bodily injury or disease so that he is then and presumably will be thereby continuously prevented for life from performing any work, from following any occupation, or from engaging in any business for remuneration or profit, provided such disability occurred after the payment of one full year's premium on this Policy and prior to its anniversary on which the Insured's age at nearest birthday is sixty years."

Upon this trial both of the defendants have controverted all the material issues and the defendant Manhattan Life Insurance Company has interposed the separate defense that the prior determination was *res adjudicata* as to the right of the plaintiff to recover any disability installments up to and including October, 1935.

A motion had been made by the plaintiff some time prior to this trial to strike out that separate defense. That motion was denied without opinion; but upon the trial before me counsel intimated that the justice sitting in the Motion Part did not intend that his denial of the motion should work a fina' determination of the problem. It is appreciated that when this very question arose upon the other trial, apparently neither side was prepared to take a firm and positive position; both sides hesitated, at times one side or the other opposing the consideration of the question of the plaintiff's total disability at the time of the trial. So it may well be that the court's attitude on this particular issue reflected the uncertainty of counsel.

However, repeated rulings have determined this question, and I must hold that the verdict in the former action covers all installments up to and including the time of trial. (*Livert* v. *Travelers Ins. Co.*, 246 App. Div. 762; *Ginell* v. *Prudential Ins. Co.*, 205 id. 494, dissenting opinion at p. 495; revd. on dissenting opinion, 237 N. Y. 554; *Mackenzie* v. *Equitable Life Assur. Soc.*, 139 Misc. 288.)

It follows that the judgment entered on the former trial disposes of any claim to disability payments up to and including the month of October, 1935, as against the Manhattan Life Insurance Company and as to such defendant the plea of *res adjudicata* is to that extent sustained

A review of the situation discloses that both defendants, that is, the Manhattan Life Insurance Company and the Equitable Life Assurance Society, originally recognized the plaintiff's claim to total disability and for a long period continued to pay the disability installments to him. Neither defendant has sought to explain either the specific grounds upon which it originally recognized the claim or the basis for its refusal to abide by or continue the original allowance of the claim. In law this may not have been absolutely necessary; in fact it would have been enlightening. There is another signal distinction between the issues presented upon the former trial and that presented upon this trial. Upon the other trial a chronic kidney affliction was the alleged fundamental cause of the plaintiff's incapacity, while upon this trial coronary thrombosis holds the stage. Apparently some of the symptoms may be identical, but the diagnosis is entirely different. The fault, if any, for such apparent conflict must be found with the medical profession and not with the law. Theory should yield to truth if justice is to prevail.

The query arises to what extent must this court be controlled by the former trial. To insist that while it might find as a matter

of fact that the plaintiff was totally disabled, that it was compelled to hold as a matter of law that he was not totally disabled, would impose an incongruous duty upon the court. A court of justice can be pardoned for its reluctance to deprive a victim of coronary thrombosis of the right to which he would otherwise be entitled were it not for such an alleged rule. It seems to me that there is no necessity for holding that the prior trial in any way passed upon the question whether or not this plaintiff had experienced a coronary thrombosis. Hence that issue remains open and this court is at liberty to approach and consider it.

The question of the plaintiff's alleged total permanent disability goes back to April, 1932, the time when it is claimed by Dr. Boas, the heart specialist called upon this trial, that plaintiff suffered a coronary thrombosis. No other heart specialist testified. His expert opinion has not been contradicted or challenged by any heart specialist. On what ground can the court legitimately challenge it?

But while defendants have not directly refuted his testimony, they would indirectly destroy it. They protest that the admission of his testimony violated the rules of evidence. They insist that he examined the plaintiff, not to treat him, but to testify; and that his diagnosis included the plaintiff's recital of a past experience; and that, therefore, his opinion was inadmissible and incompetent, citing *Belter* v. *Van Winkle* (234 App. Div. 886). This decision of the Appellate Division in turn cites *Davidson* v. *Cornell* (132 N. Y. 228). A reading of both cases does not reveal any conflict between the holdings in those precedents and the ruling in the instant case.

It is not denied that the plaintiff could have suffered coronary thrombosis in 1932; and that after such an episode there could be a total absence of any visible or tactile symptoms. In truth, doctors admit such a condition would be the likely one.

How, then, are we to determine the very question of an attack of coronary thrombosis in 1932, if we exclude the only source of information? Here we are not seeking to establish past facts by self-serving declarations. We are permitting a duly qualified expert to consider the symptoms necessary for the making of his diagnosis; symptoms which have been testified to by the plaintiff himself; symptoms which would have to be included in the hypothetical question. (*Grunfelder* v. *Brooklyn Heights R. R. Co.*, 143 App. Div. 89; affd., 206 N. Y. 720.)

" To exclude a physician's testimony because his diagnosis is based in part on such statements, is unpractical, and defies the usual processes of medical thought. Hence it should be avoided." (Wigmore Ev. [2d ed.] § 688, p. 1100.)

If plaintiff suffered such an attack or experienced such an acute episode, there is little doubt about his total permanent disability. Strange it is that while the law prohibits any but a qualified expert to vouchsafe an opinion on this question, it demands that a non-expert court decide the problem. Reason suggests that a doctor, not a judge, should determine such an issue. But a court may hesitate to completely accept the opinion of the exclusively personal privately-procured expert of one of the litigants. The question of bias or partisanship of such an expert, retained and recompensed by one side or the other, is ever present in the mind. Then, again, the cost and expense of such testimony renders a substantial equal presentation by both sides difficult, if not impossible.

This case provokes a repetition of an old but not hopeless plea — a plea for a much-needed and long-deferred change in our administration of justice. (See the discussion by Professor Wigmore, vol. 1, § 563.) The contribution of an opinion possessing at least a resemblance of impartiality, divorced from retainer by either side, would not deprive a litigant of his right to his own expert, but would put at the disposal of parties and the court the findings of an independent scientific agency.

In the instant case, the entreaty of the court that the parties voluntarily secure an examination by an acceptable expert ( ncluding necessary and recognized tests, under properly supervised scientific conditions) has proven futile. The result is that a law court is compelled to determine what is essentially a problem for the medical profession.

The court received evidence of X-rays, electro-cardiagrams, blood chemistry, urine tests, fluoroscope; and the court listened to testimony of examinations of the heart, the eyes, the kidneys, and of the plaintiff in general. Various physicians rendered their expert opinions about the ailment or affliction of the plaintiff and also about the effects of his ailment upon his capacity to do any work.

All the doctors admit he has been and still is a sick man. They differ about the nature and degree of his illness or suffering, and also disagree about the cause of his condition and the effects of his ailments.

There is no question that the plaintiff has a kidney condition. Some doctors insist the heart complaint is secondary to the kidney condition; and others assert *vice versa*. But they all admit that the heart is not diseased; and apparently all the doctors agree that the real symptoms of coronary thrombosis, particularly after the heart attack has been sustained, are subjective, not objective.

Another fact that is removed from any doubt is that this man did not cease his toil until the attack of April, 1932, tolled his curfew. Since then he has not in fact worked. Was he able to work?

The plaintiff himself could not be expected to know the true nature of his affliction nor to accurately catalog the symptoms. This is not an unblessed ignorance. And his omission to correctly and completely recite all the symptoms cannot be capitalized or construed as a fatal omission.

Whatever attack he suffered in 1932, it was sufficiently devastating to warrant the life insurance companies in paying for what was then accepted as a total permanent disability. It is plain his condition was not feigned.

Now, the only occupation that this man ever had was in the garment-making industry, a pattern maker and cutter. I am convinced he cannot carry on in that capacity today or engage in any work for compensation. To deliberately hold — not simply hazard the hope — that the plaintiff can perform such work demands that this court decide that his physical condition reasonably invites and warrants the effort immune from fatal consequences. The evidence adduced does not leave me in that frame of mind. To the contrary, I believe that the man is totally permanently incapacitated within the meaning of the policy.

The plaintiff, therefore, is entitled to a judgment as indicated.