■ BARRY NISSEN, Respondent, v PHILIP RUBIN et al., Appellants.—Judgment of the Supreme Court, Bronx County (Irwin M. Silbowitz, J.), entered April 24, 1985, which, after a jury trial, awarded plaintiff a verdict in the sum of $800,000, plus interest, reduced to $402,455 by the percentage of plaintiff's contributory negligence, is reversed, on the law, and the matter remanded for a new trial, with costs to abide the event.

This is an action to recover damages for personal injuries plaintiff sustained on March 4, 1980. Plaintiff testified that at around 6:00 P.M., on that day he slipped and fell down the stairs leading from the fourth to the third floor of the apartment building in which he resided when he stepped on a greasy or jelly-like substance which was on the fourth-floor landing. He further alleged that the light bulb near the stairway was not functioning and that the stairs were in need of repair. James Taylor, plaintiff's roommate, and Taylor's cousin, Montague Kemp, heard the plaintiff fall and carried the unconscious plaintiff to his apartment where they summoned an ambulance for him. Plaintiff was taken to Lincoln Hospital and then transferred to Jacobi Hospital, Bronx Municipal Hospital Center, where he remained until March 15, 1980.

Plaintiff testified that he was in and out of consciousness throughout that time and was treated for a depressed skull fracture of the left frontal area and grand mal seizures. Plaintiff testified that after the accident he suffered, among other things, from seizures, which lasted until April 1980, headaches, severe depression and an inability to concentrate or attend to his work. He claimed that this change in his

personality culminated in his suicide attempt on April 6, 1980, when he consumed phenobarbital pills. He was hospitalized at Lincoln Hospital from April 6, 1980 until April 14, 1980 as a result of the suicide attempt.

In response to plaintiff's description of the accident, the defendants introduced into evidence an entry from plaintiff's hospital record from the Bronx Municipal Hospital Center for March 4, 1980, at 5:50 A.M., which stated that the patient remembered "falling and cracking the left side of his head on a file cabinet." Further, a nurse's note for March 4, 1980, at 6:00 A.M., states that the patient was "Alert-oriented." At trial, plaintiff could not remember telling any doctor this and testified he was unconscious then. Defendants also point out that plaintiff's apartment, which also housed an advertising firm named "Cojet", of which plaintiff was a part owner and the account executive, contained a business file cabinet.

Since credibility was the key issue in this case with reference to the location and manner of plaintiff's accident and the extent and severity of his alleged injuries, it was highly prejudicial for the trial court to have permitted plaintiff's two expert witnesses and nontreating physicians, Doctors Klinger and Gannon, to testify concerning the history of the accident and plaintiff's physical complaints as related to them by plaintiff himself. It is a well-settled principle of law in New York that a nontreating physician, hired only to testify as an expert witness, may not state the history of an accident as related to him by the plaintiff or testify as to plaintiff's medical complaints. (*Davidson v Cornell,* 132 NY 228; *Lessin v Direct Delivery Serv.,* 10 AD2d 624.) To do so permits the plaintiff to unfairly buttress his claim for physical injuries with the added weight of an expert witness's testimony.

Agreeing that such testimony is improper, plaintiff nevertheless advances several arguments which he claims render a reversal inappropriate. As to the testimony of Dr. Gannon, a psychiatrist, who testified after Dr. Klinger, plaintiff urges that no error was committed because Dr. Gannon had a psychiatric consultation with plaintiff, rendering him a treating physician, and moreover, defendants failed to preserve the issue by not objecting to the testimony. As regards the objected-to testimony of Dr. Klinger, plaintiff asserts that defendants suffered no prejudice, since the jury heard the same evidence from plaintiff himself.

We find all these arguments unpersuasive. When the first expert witness, Dr. Klinger, testified and began to give the history of the accident, defendants promptly voiced their

objection, which was overruled. While the better practice would have been for defendant to have placed on the record another objection when Dr. Gannon also gave the history of the accident, we conclude, nonetheless, that since the "improper evidence [was] of the same sort", as that already received over objection from Dr. Klinger, another objection was not necessary to preserve the issue for appellate review. (*Kulak v Nationwide Mut. Ins. Co.,* 40 NY2d 140, 145; *see also, Schutz v Union Ry. Co.,* 181 NY 33, 36.)

Neither is there any merit to plaintiff's claim that the psychiatrist Dr. Gannon was a treating physician due to a single psychiatric consultation he had with the plaintiff. This consultation was arranged by plaintiff's attorney solely for testimonial purposes and cannot, therefore, serve to render Dr. Gannon a treating physician.

Finally, and most significantly, is the fact that the error was indeed injurious to defendants. It has been noted that while a "strong inducement" may exist for a patient to speak truthfully of his pains and sufferings for the purpose of treatment, "it may be otherwise when medically examined for the purpose of creating evidence in his own behalf." (*Davidson v Cornell, supra,* at p 237.) *Davidson* further noted that when the character of a person's injuries is an important factor bearing on damages, and a plaintiff's interest in a case presents for the jury a question of credibility, "it cannot be said that the evidence given by the [physician] of the plaintiff's declarations were not prejudicial to the defendants." (*Supra,* at p 238.) The plaintiff's case "[can] not properly be corroborated by proving that the facts to which he testified corresponded with the declarations made by him to the doctor." (*Supra,* at p 238.)

This improper corroboration of plaintiff's case was exactly what transpired here when the two expert witnesses' testimony as to the history of the accident and plaintiff's physical complaints corresponded exactly with plaintiff's trial testimony. In view of the central importance in this trial of plaintiff's credibility, and the fact that his reliability on several critical issues was strenuously challenged, we are unable to regard the error that occurred as harmless. Accordingly, we must reverse the judgment and remand for a new trial on all issues of liability and damages.

In light of this reversal, we need not reach the other issues raised on this appeal, except that, for purposes of the new trial, we do note that the court erred in instructing the jury

that it could render a verdict against the defendants on the alternative ground that the lack of lighting alone caused the accident. There was no basis in plaintiff's testimony or anywhere else in the record for this alternative theory. According to plaintiff's testimony, the lack of lighting was a contributory cause to the accident in that it prevented him from avoiding stepping on the sticky substance upon which he slipped. Concur—Sandler, J. P., Carro, Asch, Milonas and Kassal, JJ.