PURSLEY v. EDGEMOOR BRIDGE WORKS et al.

(Supreme Court, Appellate Division, First Department. December 14, 1900.)

1. INJURY TO EMPLOYE—ASSUMPTION OF RISK.

One engaged on the construction of a scaffold between piers in a river, for erection of bridge, though an efficient laborer, does not, as matter of law, assume the risk of collapse of the scaffold from improper driving of the piles and bracing of the structure, not being familiar with the principles and methods of construction.

2. SAME—NEGLIGENCE—FELLOW SERVANTS.

Where a scaffold between piers in a river for erection of a bridge falls, in course of construction, injuring a workman, from the piles having been too short, and there being an absence of sufficient braces where a crane weighing 30 tons, for lifting material, was placed, the negligence is not in mere detail of work intrusted to a fellow workman, so as to relieve the master from liability.

3. SAME—SCAFFOLD.

Laws 1897, c. 415, giving a remedy against the master in favor of an employé injured while working on a scaffold, because of some defect therein, refers to a completed scaffold.

4. EXPERTS—OPINION.

An expert may testify that the fact that piles went down 9 or 10 inches at the final blows, the hammer falling only 10 feet, would indicate that the piles were too short and not safe to construct on, and that a scaffolding without longitudinal X braces, and without cleats to the uprights, was not reasonably safe for supporting the weight and strain to which it was subjected,—a 30-ton crane.

5. SAME—QUALIFICATION.

A civil engineer with 16 years' experience, based on a regular course of study, and who, as the work progressed, noticed the manner in which a scaffold was being built, is qualified to give an opinion on the absence therefrom of certain kinds of braces, though he has never had experience in building that particular kind of false work.

Ingraham and McLaughlin, JJ., dissenting.

Appeal from trial term, New York county.

Action by Louisa C. Pursley, administratrix of Charles S. Pursley, deceased, against the Edgemoor Bridge Works, impleaded. From a judgment on a verdict for plaintiff, and from an order denying motion for new trial, defendant Edgemoor Bridge Works appeals. Affirmed.

The action was brought to recover damages for the death of plaintiff's intestate, who was employed by the defendant the Edgemoor Bridge Works, and was killed on April 11, 1899, by the collapse of a scaffold structure erected in the Harlem river. The theory of the complaint is that the defendant had negligently failed to provide a safe and suitable place for the plaintiff's intestate to work. There is practically no dispute as to the method of construction adopted in the erection of the scaffold, the case turning upon whether such method was reasonably safe. The defendant, it appears, was under contract to erect a steel bridge across the Harlem river, and stone piers were built, between which temporary scaffolds were constructed, intended to support the steel girders, etc., and thereafter to be removed. Between the stone piers numbered 6 and 7, nine rows of piles parallel with the piers, seven to nine in a row, had been driven into the bed of the river. The piles were driven almost vertically, and their tops were then forced as nearly as possible into line, and upon them were placed two timbers, known as "pile caps," which were bolted together and into the piles, thus forming a pile bent. At right angles to these pile caps were laid timbers longitudinally, called "stringers," bolted to the pile caps, and connecting the pile bents. There were three of these longitudinal timbers or stringers between each two bents, and the first bent from pier 7 was connected to the pier by stringers to a permanent bulkhead at the base of the pier. Upon each transverse pile bent were placed uprights, and on their tops was another cap or timber; there being cleats or scabs fastened to the uprights and to the cross timbers or caps above, to keep the uprights in place. The uprights appear to have merely rested on the beam below. Above the upper caps on the uprights, upper longitudinal timbers or stringers were laid, bolted to the caps, and connecting the uprights of each bent. On top of the upper stringers tracks were placed, on which ran a traveler or crane weighing 30 tons, which was used for hoisting timbers from below, and particularly for raising the upper bents, consisting of uprights with their cap bolted to them. In addition, cross beams or braces were placed between the bents, upper and lower, which were intended to strengthen the scaffold. These braces comprised "sway braces," which ran transversely, and "X braces," which ran longitudinally to the structure. At the time of the accident, X braces had been provided for the bents near pier 7, but not for the seventh, eighth, and ninth bents, and the traveler was resting above these latter bents. It had been gradually pushed along as the structure grew, and was made to rest upon uncompleted scaffolding. It was not, however, in actual use when the accident happened. At that time the plaintiff's intestate, who had some experience in bridge and scaffold building, was at work in a boat below the traveler. He had been sawing piles off evenly, and securing sash braces between them below the high-water line. There is no evidence that he had anything to do with the upper structure, or knew that X braces had not been provided for the last three bents. The defendant sought to explain the accident by showing that just prior thereto some workmen had drawn bolts from the stringers, thus breaking the chain of beams which reached back to the bulkhead. To rebut this, the plaintiff introduced evidence that these workmen had denied having drawn any bolts. The plaintiff claimed that the proximate cause of the accident was faulty construction

of the scaffold, because the piles were not properly driven, and it was necessary to force them into line, and because X braces and cleats were not provided for the bents above which the tralever rested. At the conclusion of the case the issues were submitted to the jury upon a charge and written communication which stated: "The plaintiff alleges that the structure fell because of some defect in the piles themselves, in number or arrangement of them, or because of the lack or insufficiency of bracing, or because the uprights were not fastened to the pile caps, sometimes called 'sills beams,' or because the derrick was too heavy for the structure to bear, or because of some, any, or all of the above-mentioned reasons." The jury returned a sealed verdict in favor of the plaintiff for $4,000, and from the judgment entered thereon, and from order denying motion for a new trial, the defendant appeals.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Carl A. De Gersdorff, for appellant.
Thomas P. Wickes, for respondent.

O'BRIEN, J. The defendant upon this appeal contends that the judgment should be reversed because (1) there was no competent evidence that the defendant had not exercised reasonable care to insure the safety of the structure, or that the accident was caused by its negligence; (2) the opinion evidence to the effect that the structure was unsafe was inadmissible; (3) the plaintiff's intestate was himself engaged in erecting that part of the structure which fell, had full knowledge of any defects which existed, and took the risk thereof; and, (4) if there is any negligence in running the traveler out over the last bents without X braces and cleats, it was negligence in a detail of work, for which defendant is not liable to an employé injured thereby. The contentions presented involve not only the usual questions of defendant's negligence and plaintiff's freedom from contributory negligence, but, if these are resolved favorably to plaintiff, there are still the additional questions whether the collapse of the structure was a risk which the workman assumed, and whether it was caused by the negligence of a co-employé in performing a detail of work intrusted to him, for which negligence the master is not responsible. Whether the plaintiff, who was himself engaged in completing a part of the scaffold which fell, had knowledge of existing defects, was, we think, properly submitted to the jury as a question of fact. The risks which he assumed were only those apparent to observation, or which, from the character of the structure, he was bound to observe and know. And, as well expressed in the headnote in the case of Davidson v. Cornell, 132 N. Y. 228, 30 N. E. 573:

"Where, however, although the defect is apparent, it may require skill and judgment not possessed by ordinary observers or by the servant to give knowledge of hazards which may be apprehended therefrom, he does not assume those hazards."

Here, the plaintiff's intestate was an efficient laborer, but it does not appear that he was familiar with principles and methods of construction; and, not being thus skilled, he could not be charged, as matter of law, with knowledge of the condition of the piles, which for the most part were concealed in water and earth, and with driving which he had nothing to do, nor with knowledge of the effect of the presence or absence of particular braces in the superstructure. Nor

67 N.Y.S.—46

do we think, if the causes assigned by plaintiff for the accident, which we will hereafter discuss, were the true and proximate causes, that these were a mere detail of the work, intrusted to a fellow workman, for which the master is not responsible. The latter was bound to exercise care in erecting the structure on or about which the employés were to work. We do not mean to be understood that in some cases the master may not employ persons, as in a hazardous undertaking, and escape liability for injuries resulting from the incidental risks; but our remarks are addressed to the particular structure here in question, which was not inherently dangerous, and which, if properly erected, would at all times have provided a place to work in which the employés would be reasonably safe. This duty of providing a place reasonably safe was imposed upon the defendant, and could not be delegated.

Passing from the consideration of assumed risk and contributory negligence and negligence of fellow workmen, we are brought to what we think is the real and most difficult subject before us, namely, whether there was sufficient and competent proof given at the trial to justify the submission to the jury of the question of defendant's negligence. The latter's theory of the cause, that it was due to workmen who drew certain bolts, was met by opposing evidence, and this question was properly submitted to the jury. The respondent insists that the verdict which found defendant negligent may be supported by the doctrine of res ipsa loquitur, or by the failure of defendant to comply with the provisions of chapter 415 of the Laws of 1897, which impose upon a master liability for neglect in constructing an unsafe scaffold. We think, however, that the statute which gives a remedy against the master in favor of an employé who is injured while working on a scaffold by reason of some defect therein has reference to a completed scaffold. And, for a similar reason, we think that the doctrine of res ipsa loquitur does not apply, because this scaffold was in course of erection, and from the mere falling of part of it, alone, the inference of negligence cannot be drawn. We must consider, therefore, the specific grounds of negligence alleged in the complaint, or upon which proof was given at the trial, and from these conclude favorably or unfavorably to the appellant. As correctly summarized by the appellant:

"The negligence particularly specified in the complaint, and which the plaintiff attempted to prove on the trial, was that the traveler ought not to have been run out upon the seventh, eighth, and ninth bents, because the piles upon which the false work was supported were too weak for the purpose for which they were used, and were improperly driven, and because insufficient cross or X braces were used to connect the different bents, and the upper portion of each bent was insecurely fastened on the pile cap with cleats or scabs. In addition to such charges of negligence, there was testimony given at the trial that at the time, and a day or two before the accident, there was not timber there for the X braces."

There is other evidence in the case that the timber was there, so upon this point a disputed question of fact arose. Whether defendant was negligent in not providing material suitable for X braces was not submitted to the jury, the court limiting the negligence to the other charges above enumerated, and we may therefore dismiss

the question of whether or not sufficient and proper timber was supplied by the defendant from further consideration. So with respect to defective plans. Though such defect was alleged in the complaint and referred to on the trial, the questions relating thereto were, on plaintiff's request, withdrawn from the consideration of the jury.

Upon the question of whether the piles were sufficient for their purpose, it is admitted that they were not exactly plumb, and that the heads of some of them were pulled by lines from an engine into place, in order to make a straight row upon which to bolt the pile caps; and it appears that after the accident the piles which were under the traveler were found broken off short at the river bed. The principal evidence relating to the piles was given by experts, one of whom, Mr. Tate, was superintendent for defendant Rodgers, and, on examination by plaintiff's counsel, stated that "these piles were driven * * * in the usual and ordinary way, * * * in a workmanlike and proper manner," and "the piles were sufficient to support the weight of the false work and traveler." This was nothing more or less than the opinion of an expert, which was the same kind of evidence that appellant insists it was error to admit. Objection was made to the expression of opinion by the other expert, Mr. Joyce, as to the safety of the piles for their purpose. This is not necessarily inconsistent, however; for the defendant had the right to object to plaintiff's using such evidence, and, when it was allowed, without waiving the exception to its competency, could rely upon like evidence. The first of this opinion evidence was brought out by defendant's counsel in examining Mr. Rodgers, the contractor for the pile work, who stated, in answer to a question, that, from his large experience, "such piles as he saw were driven in a proper and workmanlike manner." Opposed to this evidence is the testimony of Mr. Joyce, who, as well as Mr. Tate, was skilled in bridge and scaffold building, and worked on the structure in question. He testified that Mr. Mahon, who inspected the piles, had asked him to see the piles driven, and to give his opinion, and he told Mr. Mahon that they were not driven properly; exception being taken to the admission of this statement. He then testified that the drop of the hammer on the piles was 10 to 12 feet, and the piles went, under each of the final blows, from 9 to 10 inches. When asked what that indicated, he answered that the pile was too short. A motion was made to strike out the answer, which was denied. To the further statement that the usual distance to drop the hammer was at least 30 feet, exception was taken. He was then asked whether, as an experienced pile driver, the piles, in his opinion, were solid enough to construct upon; and, under exception, he answered that they were not. The appellant further objects that the testimony of Mr. Joyce referred to piles which, as matter of fact, did not figure in the accident, because they were not under that part of the structure which fell. But the plaintiff could not be expected to give evidence as to the way in which each pile was driven. The method of driving the piles was determined when such work was begun, and it does not appear that, after the first piles mentioned were driven, any material change was made in their selection or the manner of driving

them. There is in evidence a letter from Mr. Rodgers, directed to the defendant, and written before the accident, to the effect that:

"Mr. Tate is of the opinion that the piles 55 feet long, as arranged for, are too short, and is fearful that they are not solid enough to construct upon; that they are now driving two extra piles under each bent for the purpose of adding strength to it. We can get piles 70 to 75 feet long. * * *"

This letter, it seems, also referred to piles near pier 7; but another letter, written by Mr. Headrick, who was in charge of the work for defendants, indicated that thereafter little change was made. It is as follows:

"I authorized Rodgers to drive piles as mentioned in one bent only."

The introduction of these letters was objected to as irrelevant only, and we think the court was correct in holding that it would admit them "as evidence of notice to the defendants of the facts stated, * * * but not as evidence of the truth of these facts. You must prove that the facts actually existed." This burden the plaintiff subsequently undertook to prove, and thereafter, upon the question of notice merely, the letters were admitted.

Upon the subject of insufficient bracing and support of the structure by cleats, the main facts are admitted, i. e. that there were no cross or X braces between the last three bents at the time of the accident nor cleats. And it is admitted, also, that the traveler or crane, weighing 30 tons, was directly over such bents. Aside from the X braces and cleats, it appears that sway or transverse braces had been provided, and that the stringers had been bolted to each other; and the appellant contends that the structure thus built was sufficient to sustain the weight and strain to which it was subjected, and that the absence of the X braces and cleats had nothing to do with the accident, which was caused by the withdrawal of bolts from the stringers by some of the workmen. It was shown that the original plans did not call for longitudinal X braces, which were ordered as a precaution by the engineer in charge; and it is urged that the X braces were merely to provide against a lateral thrust, presumably from the exterior, and not to sustain vertical weight. In opposition it is insisted by the respondent that, without X braces and cleats, the use or presence of the crane on top of the scaffold would make and render the structure unsafe.

The witness Joyce, whose testimony as to the piles has been referred to, testified in reference to the erection of the superstructure that the ninth, eighth, and seventh bents or sections, which fell, had no X braces or cleats, and that the traveler "was sent ahead out towards the middle of the river before the bracing was done underneath." He was then asked whether, in his opinion, the ninth, eighth, and seventh bents were reasonably safe without the X braces and without the cleats which he had described. Objection to this question was overruled, and the witness answered, under exception, that they were not safe. The next question was, "In what manner ought the structure to be constructed before the crane was put on?" and exception was taken. The question was limited to the three bents, 7, 8, and 9, and the answer was, "Those scabs ought to have

been on, and those X braces ought to have been on from one bent to another, to secure them in position and hold them." Asked if he knew what caused the collapse, he replied that he "could not answer either way." Thomas W. Hildebrand also testified for plaintiff that he had been at work as a bridge builder 12 or 13 years, and worked on the scaffold here in question, and that when the accident occurred there were no upper or lower X braces between the sixth and seventh, seventh and eighth, and eighth and ninth bents, from one bent to another, and the traveler was on the bents that fell, chained down to the sixth, with the front end out near the ninth. He was then asked, "Was it usual to put on a traveler of this kind, and stand it over bents that were not X-braced one with another, and that did not have X-bracing between the legs of the bents and the sills on which they rested?" and answered, under exception, "No, sir." The next question was whether that was a reasonably safe way of constructing such false work, and he answered, under exception, that it was not. It will thus be seen that whether the method of construction adopted was safe and proper depended to a large extent on expert evidence, and we are thus brought to a consideration of whether or not such evidence was competent. Opinions of experts may not be given if the facts on which they are based are such that men of ordinary experience and intelligence can draw the inferences therefrom without such aid. In Chase's Stephen's Digest of the Law of Evidence we find a summary taken from the case of Harley v. Manufacturing Co., 142 N. Y. 31, 36 N. E. 813, as follows:

"A., an employé in B.'s machine shop, was injured by the breaking of a belt used to move machinery. The belt was fastened with a belt fastener which gave way. A. sued B. for damages for this injury, alleging negligence. At the trial, experts in the use of belts and fasteners were asked to state their opinion as to the safety and fitness of the kind of belt fasteners which caused A.'s injury. This evidence was deemed to be irrelevant. The main question at issue was whether the fastener was suitable and safe, and this should be determined by the jury, and not by the opinions of experts."

This rule is expressed in Van Wycklen v. City of Brooklyn, 118 N. Y. 424, 24 N. E. 179, wherein it was said, as stated in the headnote:

"The opinion of a witness upon a precise question the jury is to determine is only competent when, from the nature of the case, the facts cannot be stated or described to the jury in such manner as to enable them to form an adequate judgment, and no better evidence than such opinions is attainable."

And in Transportation Line v. Hope, 95 U. S. 297, 24 L. Ed. 477, the rule was well stated as follows:

"It is upon subjects of which the jury are not as well able to judge for themselves as is the witness that an expert, as such, is expected to testify. Evidence of this character is often given upon subjects requiring medical knowledge and science, but it is by no means limited to that class of cases."

The most recent expression of the highest court of the state upon this subject is to be found in the case of Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, wherein it is said (page 533, 162 N. Y., and page 759, 57 N. E.):

"It may be broadly stated as a general proposition that there are two classes of cases in which expert testimony is admissible. To the one class belong those cases in which the conclusions to be drawn by the jury depend upon the existence of facts which are not common knowledge, and which are

peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subject. If in such cases the jury, with all the facts before them, can form a conclusion thereon, it is their sole province to do so. In the other class we find those cases in which the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves, depend upon professional or scientific knowledge or skill, not within the range of ordinary training or intelligence. In such cases not only the facts, but the conclusions to which they lead, may be testified to by experts.' The distinction between these two kinds is apparent. In the one instance the facts are to be stated by the experts, and the conclusion is to be drawn by the jury. In the other, the expert states the facts, and gives his conclusion in the form of an opinion, which may be accepted or rejected by the jury. The next step in the logical development of this inquiry is to ascertain to which of these two classes the case at bar belongs. If the knowledge of the experts consists in descriptive facts which can be intelligently communicated to others not familiar with the subject, the case belongs to the first class. If the subject is one as to which expert skill or knowledge can be communicated to others not versed in the particular science or art only in the form of reasons, arguments, or opinions, then it belongs to the second class. Ferguson v. Hubbell, 97 N. Y. 507; Roberts v. Railroad Co., 128 N. Y. 455, 28 N. E. 486, 13 L. R. A. 499; Schneider v. Railroad Co., 133 N. Y. 583, 30 N. E. 752; Parish v. Baird, 160 N. Y. 302, 54 N. E. 724; Van Wycklen v. City of Brooklyn, 118 N. Y. 432, 24 N. E. 179; Schwander v. Birge, 46 Hun, 66."

Following the rules thus given for our guidance, the question presented is, in which of the two classes defined must the evidence objected to be placed? If in the first, requiring that the testimony should relate only to facts, then it was error to admit the opinions of experts, which involved conclusions from facts. If in the second, which permits such opinions to be given, the exceptions are untenable. As stated, the opinions given related to the safety of the piles driven, and to the safety of the scaffold without X braces and cleats. Upon the first subject the expert had testified that the hammer fell 10 instead of 30 feet, and that at the final blows the piles went under 9 or 10 inches; and to a further question he answered, under exception, that that would indicate that the piles were too short and were not safe to construct upon. The conclusion thus expressed was, we think, one which a layman, unskilled in pile-driving, could not draw from the facts stated. A man of ordinary experience and intelligence could not form an adequate judgment whether a pile which sank 10 inches under a blow of a hammer falling 10 feet was or was not safe to construct such a scaffold upon. It does not appear that any better evidence than the opinions of experts was attainable on this subject, and therefore it was proper to permit the question and the answer. This evidence falls, we think, in the second class referred to, and was properly admitted.

The other opinion evidence related to whether the structure, without longitudinal X braces, and without scabs or cleats to the uprights, was reasonably safe for supporting the weight and strain to which it was subjected; i. e. a 30-ton crane at a particular place. Here, again, it is not certain that one not versed in the science and art of construction, after a detailed statement of the facts showing the manner of construction, could form an adequate judgment as to whether a scaffold so built was safe. To do so would require knowledge of the resistance of beams of which, as testified, the scaffold

was built, the exact purpose and effectiveness of sway and X braces, and the composition and resultants of forces exerted by a 30-ton traveler or crane at the end of a structure of certain height and length. The opinions of experts on this subject, though involving the statement of a conclusion, were, therefore, competent.

Cases holding that similar expert opinions are admissible are not wanting. One of these is Littlejohn v. Shaw, 159 N. Y. 188, 53 N. E. 810, which held, as said in the syllabus, that:

"The quality and condition of gambier,—an article imported for a particular purpose, and requiring the existence of certain special conditions in order that the grade of its quality and condition in the market may be determined, were within the rule which permits the introduction of the opinions of experts competent to speak upon the subject, when, from the nature of the subject, facts disconnected from such opinions cannot be so presented to a jury as to enable them to pass upon the question with the requisite knowledge and judgment."

And in Moyer v. Railroad Co., 98 N. Y. 645, an action for damages to lands, alleged to have been caused by defendant's embankment, an expert was asked, "Are there any adequate causes, in your judgment, for this?" (injury). Held, that the question was proper, as the inquiry assumed an hypothesis, the truth or falsity of which was left open to the jury, and then asked, not what caused the injury, but what were all the adequate causes which might have been its origin, leaving the jury to determine among them. Here the experts not only did not assume, but refused to state, what was the proximate cause or causes of the accident, and gave merely their opinions as to whether the structure, without X braces and cleats, was safe and secure. Whether such braces and cleats were omitted, whether such omission was negligence, and whether that negligence was the proximate cause, were ultimately questions of fact for the jury, and were so submitted under the charge of the learned trial judge.

The case of Moore v. Westervelt, 27 N. Y. 234, has a suggestive bearing as to opinion evidence. There the question was whether or not a vessel had been properly moored, and a witness who had experience in mooring vessels was asked, "What was the condition of the fastenings of the schooner, as to safety?" And it was held that his opinion, as one possessing skill in such matters, was competent. More analogous is the case of Baird v. Daly, 68 N. Y. 547, where the question in issue was the negligent sinking of a scow, and it was held that the defendant "should have been permitted to show that the scow was unseaworthy; that is, unfitted and unsafe for the service in which she was engaged. The jury were nonexperts, and, with every fact which would enable a skilled man to determine the question of unseaworthiness, it by no means follows that they would make the proper inferences and arrive at a correct conclusion. The witness should have been permitted to answer the question put upon this subject."

Upon this branch of the case, therefore, we think that the rulings of the trial judge in admitting the opinions of the experts are supported by authority.

With respect to the evidence given by Tate, we have the further question presented by the motion made to strike out his testimony

upon the ground that he was not qualified to speak as an expert, and for that reason his opinion was improperly admitted. As a matter of fact, his testimony was not very material to the plaintiff, for an analysis of what he said will show that he never flatly stated that the absence of X braces and cleats in the false work rendered it reasonably unsafe. On the contrary, he distinctly held that the structure, if the stringers were bolted, was safe. It was difficult to get from him, under any assumption of facts, the statement that the scaffold was unsafe; and, no doubt, from his relations with the defendant Rodgers, who employed him as superintendent, and who was originally charged by the plaintiff with responsibility for the accident, there was a natural reluctance on his part to furnish evidence for the plaintiff. We should hesitate, therefore, where, as here, it appears that the evidence given could not have had a material bearing upon the result, to reverse a judgment which was otherwise supported by sufficient competent evidence. If we assume, however, that his testimony was material, we think Tate was shown to be an expert, and qualified by study and experience in his profession to give an opinion upon the subject under investigation. It is true that he stated he had never had experience in building this particular kind of false work, but it also appeared that he was a civil engineer, and had a 4-years course of study as such at college, and was a member of the Society of American Engineers; that he had been engaged in working at his profession as a civil engineer for 16 years; and that he was the engineer employed by the defendant Rodgers as superintendent in connection with the driving of the piles on this very structure, and while so in charge of the work noticed the manner in which the scaffold was being built, and the absence of X braces. Although he had never been engaged in putting up a like structure, his familiarity with similar work, added to his special knowledge of this particular scaffold, gained from observation as it progressed, and his 16 years' experience as a civil engineer, based upon a regular course of study, qualified him, in our opinion, as an expert; and his testimony, therefore, was, for what it was worth, properly admitted.

We are thus brought back to the consideration whether, upon the whole case, there was sufficient evidence to submit to the jury the question of defendant's negligence and plaintiff's freedom from contributory negligence. In many of its features this case is strikingly analogous to that of Davidson v. Cornell, supra, from which we have already quoted. In that case, as correctly stated in the headnote, defendants were engaged in constructing an elevated railroad. They used for this work a steam engine and apparatus placed upon a platform on wheels, which moved along, as the work progressed, upon girders resting upon cross beams. While the platform was being moved forward the girders on which it rested gave way, and the end of the platform fell to the ground. Plaintiff, an employé of defendants, at work upon the platform, where he had been employed for some time previously, was injured. In an action to recover damages, plaintiff's evidence tended to show negligence on the part of defendants in not properly bracing the girders laterally, or bolting them to the cross beams. In the case at bar the defendants were engaged in

the erection of a large structure or scaffold, which measured over 50 feet in height above the bed of the river, 50 feet in breadth for 75 feet, and 25 feet in breadth for an additional 25 feet. It was surmounted by a traveler with a base 50 feet by 28 feet, and a height of 62 feet, which brought its top 112 feet above the bed of the river. This structure, made up of piles, beams, planks, and braces, was much more complicated than that of the elevated railway, and, though a trestle or scaffold, in fact was in many particulars like a large building, and when completed was expected to sustain a great weight, consisting of the steel and iron girders which were to be used between the stone piers, and form part of the permanent structure of the bridge. This scaffold was a method and means intended to support, and for use in the placing and erection of, the steel spans of the bridge. The method employed was somewhat similar. In both instances, after providing for a support for the traveler, the latter was advanced to each new section, or bent so as to enable it to hoist the material which was intended to be used in forming the next section or bent. The failure in one to provide, upon the elevated structure on which the traveler was advanced as the work progressed, lateral braces or support, by failing to bolt the girders to the cross beams, was the cause assigned for the accident, while here the main cause assigned was the absence of braces and cleats on the structure of the seventh, eighth, and ninth bents or sections before advancing the 30-ton traveler. Although in the Davidson Case there was a reversal upon rulings on evidence, it was expressly held that the submission of the questions of negligence and contributory negligence to the jury was proper. In principle, we do not think, upon the facts, that the Davidson Case can be distinguished from the one at bar. Both structures were in course of erection and not completed. It is suggested, however, that there is a distinction between the two cases, growing out of the fact that in one the structure was intended for permanent, while in the other it was intended for temporary, use. Such a distinction we do not think sound. Both were intended to be completed structures, both were substantial, both were intended to sustain great weight, and the fact that one was not to be continued in use as long as the other does not seem to us to make a distinction in principle. The essential feature in Davidson v. Cornell was the fact that the structure was in course of erection, and that feature is present here. That case, therefore, is valuable not only in the way of argument, but as an authority; and we do not see why, upon the questions discussed and decided upon a state of facts nearly analogous, it is not controlling.

Upon the whole case, therefore, our conclusion is that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and HATCH, J., concur.

INGRAHAM, J. (dissenting). Upon the trial the complaint in this action was dismissed against the defendant Rodgers, and the jury found a verdict against the Edgemoor Bridge Works, appellant. The appellant had a contract to do the iron work of a bridge across

the Harlem river, known as the "Willis Avenue Bridge." The masonry piers had been built, and in order to erect the iron superstructure upon these piers the appellant caused to be built a timber structure, which rested upon piles driven in the bottom of the river, and extending from pier to pier. While this timber structure, which was to be used as a scaffold for the erection of the permanent iron structure, was in course of erection, it collapsed; and the plaintiff's intestate, who was engaged with other workmen in building this temporary structure, was killed. It seems to me that the principle applied in cases where the master has failed to furnish for his workmen a safe scaffold for use in their work does not apply; for here no scaffold was furnished, but the accident happened while the workmen were engaged in erecting a scaffold, which, when completed, was to be used by the defendant's workmen in the construction of the permanent structure. The negligence charged against the defendant was that proper piles were not supplied to support this structure, and that the structure was not sufficiently braced to sustain the weight of a traveler, which appears to have been a derrick which was run out on the temporary structure, as it advanced, to raise the timber used for the erection of the temporary structure. The negligence claimed as to the piles consisted of the fact that they were too short and were not properly driven; but the evidence shows, I think, that the accident was not caused by improper piles, as the piles themselves were broken off, instead of being pushed out of position, which would have been the case if they had been improperly driven or not of sufficient length. There was evidence tending to show that the particular portion of the structure upon which this traveler rested at the time of the accident was not sufficiently braced, and that in consequence of this absence of bracing the structure above the piles broke down; and the question, as I view it, is whether or not the defendant was liable because those in charge of the work attempted to proceed too fast, by using this traveler before the structure had been properly braced. An entirely different question would have been presented, it seems to me, if this structure had been completed, and the defendant had allowed his employés to use it when at work in constructing the bridge. That is the condition to which the case of Davidson v. Cornell, 132 N. Y. 228, 30 N. E. 573, applied. The plaintiff who was there injured was employed in building a railroad, and the court, in describing the accident, says:

"The structure called the 'traveler,' containing the engine, boiler, and other appliances, was moved on the girders from one cross beam to another, having the weight of ten to twelve tons, and required a substantial support. In this instance, for some cause, it is said, the girders swayed as the traveler was moving along upon them, and they, with it, fell to the ground. There was no lateral bracing placed between the girders before this weighty structure called the 'traveler' was moved over them. Nor were the ends at the bottom bolted. * * * There was evidence tending to prove that the bracing would have added materially to the stability of the girders, to the support of the traveler, and to the safety of the employés engaged upon it, and that such bracing is usual in like cases in other work; also, that bolting the girders at the bottom as well as at the top would have essentially aided in keeping them in the position in which they were placed. The conclusion was warranted that the situation in which the girders were when the platform conveying the engine,

boiler, and other implements was moved over them was such as to be deemed in defective condition for such use and purpose."

In that case the question of the defendant's liability does not seem to have been determined, as the case was reversed upon the question of evidence, and a new trial was ordered. The only question that the court discussed, other than that upon which the judgment was reversed, was as to whether the plaintiff assumed the risks incident to the work that he was about to do; but this question was apparently not determined, the court saying:

"Those [the risks] not obvious assumed by the employé are such perils as exist after the master has used due care and precaution to guard the former against danger. And the defective condition of the structure and appliances, which by the exercise of reasonable care of the master may be obviated, and from the consequences of which he is relieved from responsibility to the servant by reason of the latter's knowledge of the situation, is such as is apparent to his observation."

The late case of Stewart v. Ferguson (N. Y. App.) 58 N. E. 662, an appeal from this court, and decided by the court of appeals November 20, 1900, presents a case of a scaffold furnished by the master to his employés to work upon, and it was held there that sections 18 and 19 of the labor law enlarge the duty of the master or employer, and extend it to responsibility for the safety of the scaffold itself, and thus for the want of care in the details of its construction; but sections 18 and 19 of the labor law apply only to a scaffold furnished or erected for the performance of labor in the erection, repairing, altering, or painting of a house, building, or structure. Here the plaintiff, with other workmen of the defendant, was engaged in erecting the scaffold, and it was because of a collapse of the scaffold in the process of erection that the accident happened; and what was said in Kimmer v. Weber, 151 N. Y. 420, 45 N. E. 861, would seem to me to apply to this case (there the scaffold was being constructed):

"The cross pieces, or some of them, seem to have been heavy pieces of timber, and on the day of the accident two of the workmen were engaged in putting one of those timbers in place. While so engaged one of the men let fall the end of the heavy timber that he was holding, and it crushed by its sudden fall and broke one of the cross pieces of the plumbers' scaffold. This caused the whole scaffold to fall, resulting in the injury and death of the plaintiff's intestate. The accident was evidently caused by the neglect of the workmen who were handling the timber, or by some defect in the cross piece of the plumbers' scaffold. If the accident is to be attributed to the act of the workmen who were engaged in putting the timber in place, there is nothing in the case to show that the defendants are liable for the misconduct. They were co-servants, and nothing appears to charge the defendants with negligence, either in employing them originally or in retaining them. It is not suggested that the judgment can be upheld on such grounds."

The court, further discussing the relation of the plaintiff's intestate to the other employés, stated:

"The master is not responsible for the negligent performance of some detail of the work intrusted to the servant, whatever may have been the grade of the servant who executes such detail. If it is the work of the servant, and he volunteers to perform it, and if the master is not at fault in furnishing proper materials, there is no breach of duty on the part of the latter."

This seems to me to present the exact case now before us. The plaintiff's intestate was engaged in the construction of this scaffold. Other employés of the defendant, who were his fellow workmen, were engaged with him in the erection of this scaffold. By their negligence this traveler was placed upon a portion of the structure not sufficiently braced, and in consequence of that negligence the structure gave way and the plaintiff's intestate was killed. It seems to me that this was the negligence of a fellow servant, and not the negligence of the master, and for that reason I do not think that the defendant can be held liable.

McLAUGHLIN, J. I dissent. The principal question litigated upon the trial was whether or not the scaffold which collapsed was properly constructed. The defendant was not bound to furnish the best known scaffold, but only such as was reasonably fit and safe, considering the nature of the work to be done upon it,—one such as a man of ordinary prudence would construct and use, having regard to his own safety, if he were to do individual work upon it. Harley v. Manufacturing Co., 142 N. Y. 31, 36 N. E. 813. As already said, the principal fact litigated was whether the defendant had performed its duty in constructing the scaffold, and brought itself within the rule alluded to; and, as bearing upon this question, opinions of several witnesses offered on the part of the plaintiff were taken, against the objection and exception of the defendant. Thus, one witness was permitted to testify:

"Q. Now, I ask you, in your opinion as an experienced pile driver, whether the piles were solid enough to construct upon? A. They were not. Q. Mr. Joyce, were the ninth, eighth, and seventh bents reasonably safe, in your opinion, without the X braces which you have described, and without the cleats or scabs which you have described? A. It was not safe."

And another witness was asked:

"Was it usual to put on a traveler of this kind, and stand it over the bents that were not X-braced one with another, and that did not have X-bracing between the legs of the bents and the sills on which they rested? A. No, sir. Q. Was that a reasonably safe way of constructing such false work? A. No, sir; it was not."

To enable the jury to determine whether the defendant was guilty of negligence in the construction of the scaffold, it was proper and competent for the plaintiff to prove in detail the way it was constructed, the strain to which it was subjected, the weight placed upon it, and its liability to break by reason of such strain and weight, as well as the experience of persons who had constructed and used similar scaffolds. In other words, the construction and strain, by reason of the use of the scaffold, could all be laid before the jury, and, after a fair and full consideration of such facts, it could determine whether or not the defendant had performed its duty. It certainly did not aid it in the discharge of such duty to permit a witness to say that it was not properly constructed or that the scaffold was not safe, because those are questions which must be determined from the facts, and not from the conclusion of a witness, no matter how learned or skilled he might be in the construc-

tion of scaffolds.  The exceptions taken to the admission of this testimony were well taken, and, for the errors thus committed, I think the judgment should be reversed, and a new trial ordered.