JULIUS SCHEIDER, as Administrator, etc., of LOUIS B. SCHEIDER, Deceased, Respondent, *v.* THE AMERICAN BRIDGE COMPANY, Appellant.

*Negligence in the erection of an iron column — defective condition of the apparatus used — res* ipsa loquitur *— duty to protect a rope from being cut by the sharp edge of a girder — testimony that wire rope should be used.*

In an action brought to recover damages resulting from the death of the plaintiff's intestate, it appeared that the defendant had the contract for constructing the framework of a building on the north side of a public street in the city of New York and that, while it was raising into position a heavy iron column by means of an appliance called a gin pole, a hempen rope, supporting the gin pole, broke, and that its fall caused another column which had been erected, but had not yet been securely fastened, to fall and kill the plaintiff's intestate who was lawfully walking along the sidewalk on the south side of the street.

The evidence justified a finding that the accident was due to the defective condition of the gin pole and the apparatus used for its support or to negligence in the method and manner of its operation.

*Held,* that the rule of *res ipsa loquitur* applied;

That the jury were authorized to find that the failure of the defendant, when wrapping one of the ropes supporting the gin pole about a girder, to protect the rope in such a manner that it would not be cut by the sharp edges of the girder, constituted an act of negligence;

That a witness for the plaintiff who had had forty years' experience in the con-
struction, supporting and operation of derricks might properly be asked,
"Now, from your experience as a builder and rigger, what is the common
means of guying a derrick for the purpose of raising heavy weights ?" and be
allowed to answer that wire rope or cable was generally used in the support of
such a structure.

APPEAL by the defendant, The American Bridge Company, from
a judgment of the Supreme Court in favor of the plaintiff, entered
in the office of the clerk of the county of New York on the 1st
day of March, 1902, upon the verdict of a jury for $9,500, and
also from an order entered in said clerk's office on the 22d day of
March, 1902, denying the defendant's motion for a new trial made
upon the minutes.

*Richard Reid Rogers*, for the appellant.

*Otto Horwitz*, for the respondent.

HATCH, J.:

This action was brought to recover damages for negligence in
causing the death of plaintiff's intestate. The defendant was
engaged in erecting the iron framework of a power house for the
Manhattan Railway Company on the north side of Seventy-fourth
street near Avenue A in New York city. The deceased was walk-
ing in an easterly direction on the south side of Seventy-fourth
street, opposite the place where defendant was erecting the frame-
work, when he was struck on the head and instantly crushed to
death by the falling of an iron column about seventy-four feet in
length and weighing about ten tons.

The place where the deceased was walking at the time of the
accident was a public street, and he was lawfully thereon. The
defendant admits that the question of contributory negligence of
the deceased was properly submitted to the jury, and that their find-
ing upon that point cannot be disturbed. The questions, therefore,
presented upon this appeal are confined to defendant's negligence
and to certain exceptions taken to the admission of evidence over
the defendant's objections.

At the moment of the accident the defendant was engaged in
lifting a steel column seventy-four feet in length and weighing

about ten tons, for the purpose of placing it in an upright position with its base resting in the basement of the power house. Several of these columns had already been placed in position. This work was done by the use of a steel gin pole, consisting of an upright mast sixty-five feet high and weighing 1,100 pounds, made of open lattice work, broader in the middle, tapering towards both ends and standing upon wooden supports. It had no boom or arms and it was, therefore, necessary in using it to lift these columns to shift the gin pole each time, so as to bring it directly in front of the column to be lifted. The gin pole and the ropes and tackles upon it had been used in lifting eight other columns already erected. At the time of the accident the gin pole stood at a point in the excavation immediately opposite where the column lay in the gutter on the north side of Seventy-fourth street and distant therefrom about seventeen feet. It was held in position by three guy ropes, one running due east, another due west and one due north. It also had a headline, used to keep it from falling backward after the weight had been taken off. The east and west guy ropes consisted of a double set of falls of four strands of rope and ran down from the top of the gin pole due east and west where they were anchored at the ground. The rear guy rope, upon which it was shown the entire strain of lifting fell, for seventy-five feet, consisted of a double set of falls similar to the easterly and westerly guy ropes. These double falls terminated in a hook, to which was fastened a single hempen manila rope one and one-half inches in diameter called a pennant line, which ran back the remaining distance to the anchorage. This single pennant line was wrapped twice around an iron girder riveted between two upright columns at a height of about fifty feet above the ground. At the place where the rope was wrapped around the girder there was a plate with flanges above and below, making four sharp edges. With this apparatus the defendant attempted to lift the column from out of the gutter over a fire hydrant and lower it into the basement of the building. As the gin pole stood about seventeen feet north of where the column lay, it was necessary in order to keep it from striking the hydrant to raise it vertically. This was done by attaching another set of falls to the column, being lifted at a point about where the lifting falls were attached and by having this extra set of falls

fastened to another column lying in the street toward the south side thereof in order to pull the rising column in an opposite direction from the gin pole, and thereby a greater strain was imposed upon the rear guy ropes. The gin pole inclined slightly toward the street. Power to raise the column was imparted from an engine. By the order of the defendant's foreman the engineer started the engine and the column began to rise. At this moment it was discovered that the guy ropes were slack, the engineer was directed to stop and the east and west guys were tightened. There was a dispute among the various witnesses as to whether the rear guy rope was slack or not, whether it was tightened or not; if it was slack it would allow the gin pole to incline forward. After the slack of the guy ropes had been taken in the engineer again started the engine, and when the column had reached about the top of the fire hydrant the rear guy rope or pennant parted. The gin pole, thus deprived of its support and with the heavy weight attached to it, toppled over towards the south side of Seventy-fourth street. In falling the east guy rope struck the next standing column to the east, which had been erected that morning but was not yet securely fastened, causing that column to fall over toward the south side of Seventy-fourth street. It fell clear across the sidewalk on the south side of Seventy-fourth street, and in its fall struck the intestate, who was running to get out of danger.

There was a sharp dispute in the testimony as to whether the pennant line, which was wound around the iron girder, was protected from being cut upon the sharp edges of the iron. The testimony upon the part of the plaintiff tended to establish that there was no such protection, and that at the place where the rope parted it presented the appearance of having been cut as with an axe. It was a sharp clean cut, and the jury were authorized to find from the testimony of the witnesses for the plaintiff who spoke upon this subject that the rope was cut upon the edges of the iron. Upon the part of the defendant proof was given tending to establish that this iron girder was wrapped around with canvas and the rope wound around the girder over the canvas so as to prevent cutting, and that the rope did not part where it was wrapped around the girder, but some distance beyond, between the hook and the girder. The issues thus presented by the testimony were carefully submitted

to the jury in an unexceptionable charge, and the jury were authorized to find that the falling of the derrick was occasioned by the cutting of the pennant rope upon the edges of the iron girder where it was wrapped around. It cannot be doubted but that the jury were authorized to take into consideration the enormous strain upon this rope and to conclude that it was an act of negligence in wrapping the rope around the girder in such manner that it would be brought in contact with the sharp edges of the girder. Indeed the proof upon the part of the defendant recognized such fact. Its testimony shows that it deemed it necessary to protect the rope when so wrapped around the girder with the canvas, as it recognized that the strain upon the rope against the unprotected edges of the iron girder might sever it. If, therefore, it wound it around without protection, it was clearly a negligent act. Whether the canvas was upon the girder or not was a question in serious dispute, and upon conflicting proof the jury found in favor of the plaintiff. It must be held, therefore, upon this appeal that the plaintiff successfully bore the burden of establishing negligence upon the part of the defendant, the results of which produced the injuries.

Upon this branch of the case, therefore, it does not become necessary to discuss the other elements in which the defendant claimed to have exercised care and the plaintiff claims it to have been disregarded, for in the point suggested the vital question arises upon which negligence of the defendant could be predicated, and the finding of the jury thereon has established such fact against defendant's contention. Aside from this question, however, is still another upon which this recovery can be sustained. The deceased was walking upon a public street and met his death through no fault of his own, but solely by reason of the acts of the defendant in carrying on the construction of the work. The method and manner in which this work was performed was laid before the jury in its entirety, and from the facts which were proven in the case the jury were authorized fairly to infer either a defective condition of the gin pole and the apparatus used for its support, or negligence in the method and manner of its operation. Where such proof is given the rule of *res ipsa loquitur* is made to obtain, a *prima facie* case of negligence is established and an obligation is imposed upon the defendant to explain its acts. (*Mullen* v. *St. John*, 57 N. Y. 567; *Jones*

v. *Union Ry. Co.*, 18 App. Div. 267.) In *Wolf* v. *American Tract Society* (164 N. Y. 30) this rule was recognized, but its application was denied for the reason that the presumption of negligence which arose out of the facts of that case was not sufficient to sustain a recovery against both of the contractors, as the one responsible for causing the injury was not identified. The presumption of negligence did not identify the party ; consequently one element in the proof was lacking, but the acts proved, from which the injury arose, were held sufficient to sustain a recovery, if followed by proof identifying the party responsible therefor.

It is quite true, as claimed by the defendant, that the doctrine of *res ipsa loquitur* is a rule of evidence. It is to be applied, however, in manner precisely the same as is all other evidence tending to establish a given proposition. When facts and circumstances are given in evidence, out of which arises the rule, then the party against whom it operates is called upon to explain, and, in the absence of sufficient explanation in destruction of the presumption, the question is to be submitted to the jury to be disposed of by them. (*Griffen* v. *Manice*, 166 N. Y. 188.)

The case of *Welsh* v. *Murray* (2 App. Div. 205), relied upon by the appellant, recognizes this rule and states the principle as enunciated in *Morris* v. *Strobel & W. Co.* (81 Hun, 1). In the *Welsh Case* (*supra*) the defendants were using a street in the construction of a sewer under a contract with the city of New York. They were, therefore, properly in the street. The plaintiff therein was not using the street as a highway, but was watching the work which the defendants were engaged in doing, and it was held that the defendants owed no duty to the plaintiff, as there was no contractual relation existing between them, and the plaintiff at the time was not making use of the street for purposes of passage. It is not necessary in all cases that a contractual relation exist in order that the doctrine of *res ipsa loquitur* should find application. In the present case the deceased was passing along the street, as was his legal right to do. The defendant owed him a duty not to make his use of the street dangerous. It did not rest upon any contractual relation between them, but upon the right of the deceased to make use of the street and upon the obligation of the defendant not to inflict injury upon him while there. When the defendant caused

his death under such circumstances, it was called upon to explain its action, and in order to relieve itself from liability was bound to establish that the accident, resulting in death, was not occasioned by any act of negligence upon its part. Under this rule, therefore, it is sufficient to say that the jury were authorized to find that the defendant did not satisfactorily explain its conduct in the matter, and did not show that it was entitled to be relieved from the presumption that arose out of the facts and circumstances of the case. Upon the whole case, therefore, the defendant was properly charged with negligence.

The defendant further urges as ground of reversal an exception taken to the admission of certain testimony given by the witness Wright. The evidence disclosed that Wright was qualified to speak with respect to the construction, supports and operation of derricks. He had forty years' experience in this country and in Scotland. He was examined and cross-examined at considerable length, covering the whole subject-matter of the mechanism of derricks, hoisting apparatus, supports and method of operation. Upon the direct examination he was asked the following question : " Now, from your experience as a builder and rigger, what is the common means of guying a derrick for the purpose of raising heavy weights ? " This was objected to as incompetent, irrelevant, immaterial, as calling for a conclusion, and not showing the existence of similar conditions as existed in the particular derrick. The witness had testified with respect to the particular structure which was here in operation, its rigging, construction and method of operation, and had shown himself to be fully conversant upon the subject. The evidence was material, as it bore directly upon the question as to whether the supports of the derrick were sufficient, and as bearing upon that proposition it was competent to prove the usual and ordinary method of support, which obtained in connection with the different forms of derricks used in hoisting heavy weights. The witness, therefore, was shown to be competent to speak, expert testimony upon the subject was admissible (*Scandell* v. *Columbia Construction Co.*, 50 App. Div. 512), and the testimony which was given was competent and material. (*Pursley* v. *Edge Moor Bridge Works*, 56 App. Div. 71; affd. on appeal, 168 N. Y. 589.) This testimony fell within the first of the two classes into which the subject is divided

(*Dougherty* v. *Milliken*, 163 N. Y. 527), and the witness was authorized to and did give facts which were not of common knowledge, and the jury were left to draw the conclusion. It was not strictly necessary to the competency of the proof that it should be limited to the particular derrick or hoisting apparatus used upon this occasion. The testimony related to the general subject of supports which were regarded as essential to that class of structures used in hoisting heavy weights. Whether manila or wire rope should be used for supports was a pertinent subject of inquiry, and it could make no possible difference what the particular character of the structure was so far as the testimony related to the kind of material necessary to be used to give it stability.

From all that appears in this testimony it is apparent that wire ropes would be as available for use in support of the gin pole as would manila ropes, and either might be used in support of a boom derrick as well as upon the particular structure. It seems to be evident, therefore, that testimony showing that wire rope or cable was generally used in support of such a structure was competent, and especially is this true where evidence was given tending to show that the particular rope which parted upon this occasion was of doubtful sufficiency for the purpose for which it was used.

Nothing appears in the case which would justify this court in interfering with the amount of the verdict. It has the support of testimony, and nothing appears to show that the jury were actuated in its rendition by any improper reason.

It follows that the judgment and order should be affirmed, with costs.

VAN BRUNT, P. J., O'BRIEN, INGRAHAM and McLAUGHLIN, JJ., concurred.

Judgment and order affirmed, with costs.